WILLIAM NIBLO *vs.* JOHN BINSSE, executor, and LOUISA
LA FARGE, executrix, &c. of JOHN LA FARGE, deceased.

Where a plumber agreed to do the plumbing work to a house then about to
be erected, and to furnish the materials, for a gross sum, to be paid in
installments, the last two installments to be paid as follows : $1500 when
all the work should be completed, and the balance, $1000, when the work
should be tested and found to be sufficient, according to the provisions of
the contract; the payments to be made upon the certificate of a certain
architect that they were due according to the contract; and a substantial
part of the work to be done was not yet finished, when an accidental fire
occurred, and destroyed the building ; the work not having been tested,
and no certificate obtained from the architect; *Held* that the plumber could
recover no part of the last two installments.

No excuse for the non-performance of a contract is recognized by the law,
except where performance has been rendered impossible by the act of God,
by the act of the law, or by the act of the other party.

Accidental fire is not deemed so far the " act of God" as to be received as a
legal excuse for the non-performance of a contract.

In legal acceptation the act of God is such an act as could not happen by
the intervention of man. Every other kind of impossibility the law re-
quires of every man who contracts to perform any work for another, to
provide against in his contract.

Where the *law* creates a duty or charge, and the party is disabled from per-
forming it, without any default in himself and he has no remedy over,
then the law will excuse him; but where the party, *by his own contract*,
creates a duty or charge upon himself, he is bound to make it good, not-
withstanding any accident or delay by inevitable necessity ; because he
might have provided against it by contract. And the law will no more
rectify or supplement, than it will create, contracts ; except in cases of
fraud or mistake.

APPEAL from a judgment rendered upon the report of a
referee. By written agreement, dated the 14th of April,
1853, John La Farge agreed with Anthony E. Hitchings,
that the latter should furnish all the materials and put into
the La Farge Hotel and Metropolitan Hall then being built
in Broadway near Amity street, the steam boilers, and steam
engine pumps, hot water tanks, and all apparatus and other
necessary fixtures and appurtenances for warming the rooms,
halls, entrances, drying rooms, water, &c. of the La Farge
Hotel and Metropolitan Hall. The contract price was

$10,000, and was to be paid by installments as the work progressed.    The fifth installment ($1500) to be paid "when the coils are in the concert room, and the ornamental screens are fixed in the hotel and concert rooms, and all the work completed."    The sixth and last installment, $1000, was to be paid "when the work is tested, and found to be sufficient according to the provisions of this contract."    The contract also provided that "the said payments (contract moneys) shall be made upon the certificate of the said architect, that they are due according to the provisions of this agreement."    Under this contract Mr. Hitchings proceeded with his work, and was, from time to time, paid various sums upon the contract, amounting in all, as found by the referee, to $7500, but in no instance was any one of such payments at any particular time equal to any given installment ; at no time was an architect's certificate obtained or required.    The last two payments were $1000 on the 24th of October, and $1500 on the 15th of December, 1853.    On the 7th day of January, 1854, and when Hitchings' work had been very nearly completed the La Farge Hotel, including the entire building, was totally destroyed by fire, and a large part of this work perished with it.    All of the material which Hitchings had put into the building, including the steam engines and pipe, which remained after the fire, Mr. La Farge kept and retained as his own property, and for his own use.    He used the steam boilers afterward for heating another hotel. built upon the same spot ; and he sold to Mr. Hitchings the debris of the pipe for $1000.    The referee found that "the work remaining undone would have cost but little beyond the sum of $1000 ;" while the testimony shows, as the plaintiff insists, that the work remaining undone would not have cost $221. A part of the building in which Hitchings' work was done was connected and under the same roof with the hotel, and was known as Tripler or Metropolitan Hall.    After Hitchings had put the warming apparatus into this "Hall" the "Hall" was used for several weeks by La Farge and his ten-

ant for public purposes, such as Jenny Lind's concerts ; and on such occasions was warmed by the use of Hitchings' warming apparatus. A jeweler's store was also warmed by it, and the occupant paid La Farge or his lessee for it. The apparatus of Hitchings was used to test the plumbing work in the building, and also, for some weeks before the fire, to dry the walls and rooms of the hotel. This suit was brought to recover a balance claimed to be due under the above facts. The plaintiff claimed that he was entitled to recover the difference between the contract price, $10,000, and the amount paid, less such sum as it would have cost, at the time of the fire, to fully complete the work. · Hitchings assigned this demand with others to his creditor, the plaintiff, who brought this suit. The referee, the Hon. Wm. Mitchell, reported in favor of the defendants.(a)

From the judgment entered by the defendants upon that report the plaintiff appealed.

(a) The reasons given by the referee for his conclusions, are contained in the following opinion, annexed to his report :

" In the case of *Menetone* v. *Athawes*, (3 *Burr*. 159,) a ship builder repairing a ship had nearly finished his work, when the ship was destroyed by accidental fire. There was no special contract how he should be paid. It follows, then, according to usage, he would charge for his work by day's work, and was thus entitled each day for what he had done in that day. The court said it was like a horse that a farrier was curing, being burnt in the owner's own stable. This would imply that if there had been a special contract the fire would not have excused a non-compliance with it. A farrier, who is to receive a certain sum on the curing of a horse, could not be paid if the horse died under his care. But if he were merely employed to attend the horse, every day's labor would entitle him (as it would a physician) to a day's pay. Accordingly, in *Gillet* v. *Manman*, (1 *Taunt*. 137,) a printer was not allowed to recover for the work actually done by him, but which was destroyed by fire, although the defendant furnished the paper to be used, and thus the work became the defendant's ; because the custom was, that the printer should not be paid for any part of the work until the whole was completed and delivered. The custom made the special contract, that the work was to be paid for when completed and delivered, and an accidental fire did not change the contract, and entitle the printer for part pay for what he had done, because that was not the contract.

In *Bunsby* v. *Smith*, (3 *Alabama Rep.*) the builder was to erect a house on.

Niblo *v.* Binsse.

*E. P. Cowles,* for the appellant.

*T. J. Glover,* for the respondents.

*By the Court,* CLERKE, J.  Was the assignor of the plaintiff excused, under the circumstances of this case, from completing the work which he contracted to perform ?

From the earliest period of our legal history, no excuse for

the defendant's ground, and to be paid $473 when the work should be completed, without any provision for payment by installments.  The house was destroyed by fire, before it was finished.  The court below allowed the builder to recover the value of what he had done ; the court above reversed the judgment, and said in substance that although the materials were to be furnished by the employer, yet, by the express terms, the labor was not to be paid for until the contract was completed, and that if this was rendered impossible without the act of the employer, there can be no recovery for the work actually done.

In the same state, in *Partridge* v. *Forsyth,* (29 *Alabama,*)  the counsel for the builder admitted the above rule, where by the contract nothing was to be paid until the house should be finished, but he contended that if there were a special contract, and by it portions of the compensation were to be paid as the work progressed, the builder was entitled to recover the installment which had accrued when the house was burnt.  He claimed nothing beyond these installments which were payable before the fire.  The court said :  " The jury may have inferred that Forsyth was entitled to be paid in whole or in part before the completion of the work.  If such was the contract, he was entitled to recover the installments which had matured, or the *pro rata* value of the materials and work, as the testimony should show the contract to be."  Thus the controlling principle is what was the contract, and that a fire could not alter the contract.  It was immaterial where the work was when done, or who furnished the materials ; the same criterion still applied, viz : was any installment payable when the fire occurred, or were any days' work then earned ? If so, the workmen could recover, otherwise not.

In the case of personal services the well known usage is to pay periodically, and unless this intention was in some way negatived by the terms of the contract the inference would be that payments were to be made in that way, although a gross sum were agreed upon for the whole term.  Yet even in those cases if the terms of the contract or the usage of trade make it clear that the payment was to be made only if the whole work should be completed, even the death of the workman will not entitle his representatives to even a proportionate part of the payment.  Of the latter class is *Cutler* v. *Powell,* (6 *Term R.* 320–6,) where the second mate of a vessel was to be paid a gross sum, larger than was usual, on hiring by the month, provided he proceeded, continued, and did his duty as second mate, on a voyage from Ja-

non-performance has been recognized, except where the per-
formance has been rendered impossible by the act of God, by
the act of the law, or by the act of the other party ; or, in
the language of Coke, (*Coke Litt.* 206,) "in all cases where a
condition of a bond, recognizance, &c. is possible at the time
of making the condition and before the same can be per-
formed, the condition becomes impossible by the act of God,

maica to Liverpool. He died on the voyage, and his representatives were
not allowed to recover any thing. The court said he stipulated to receive the
larger sum, if the whole duty were performed, and nothing unless the whole
of that duty were performed: it was a kind of insurance. The court said
they would have made a different decision if there were a clear usage to the
contrary.

Of the former class, as it seems to me, are the cases of *Wolfe* v. *Howe*, (20
*N. Y. Rep.* 197 ;) *Fahey* v. *Worth*, (19 *Barb.* 341 ;) *Green* v. *Linton*, (7 *Porter,
Ala.* 133,) and *Davis* v. *Preston*, (6 *Ala.* 83.) In *Davis* v. *Preston*, the plaintiff
agreed to serve for a year, to be paid $300 at the end of six months, and
$300 more at the end of the year; he left after the six months had expired,
but before the end of the year, and was allowed to recover for the six months,
and it was held that his subsequent breach of contract did not defeat his
right to that which he had previously earned.

In *Green* v. *Linton*, the plaintiff had agreed to superintend the defendant's
smithing business for a year, and was to have one-fourth of the profits. He
did so for eight months, and was then disabled by sickness. The court
allowed him to recover his proportional part of the profits of the year, but
not one-fourth of the profits of the eight months, as that might be more or
less than his proportion of the profits of the year.

In *Wolfe* v. *Howes*, the employee, though engaged for a year, was to be paid
at the rate of $40 a month, of which $10 was to be paid monthly, and in
*Fahey* v. *Worth*, the employee was engaged for the year, but was to be paid
monthly. Sickness in each case, and death also in the first, prevented the
rendering of the personal services for the whole year. In each case, the em-
ployee or his representatives were allowed to recover the proportional part
of a year's wages. In *Wolfe* v. *Howes*, a part of Judge Allen's opinion would
imply, that in all cases where a contracting party was prevented from fulfill-
ing a contract, without fault on his part, he could recover for the services
rendered; but that opinion, as I understand, he subsequently limits to the
case of personal services, and where the omission is from the act of God or
of the law, or of the opposite party, as he says, (p. 202,) the conclusion then
is, that when the performance of work or labor is prevented, or rendered
impossible by the sickness or death of the party, a recovery may be had for
the labor actually done. The court in that case took care to restrict the
rule, "saying that quite a different question would be presented by a case

Niblo *v.* Binsse.

or of the law, or of the obligee, &c. there the obligation is saved."

If the assignor of the plaintiff could have been excused at all for the non-performance of the contract in this case, the excuse must have been on the ground that the performance became impossible by the act of God.

The accident of fire has, indeed, rendered it impossible

where the services actually rendered should prove valueless, as if one engaged to compose an original work, and having faithfully employed himself in preparation, should die without having completed any work of value to the employer."

These cases in our courts seem to have been placed on the ground that where a party is prevented from completing an act by the act of God or of the law, or of the opposite party, he may recover for what he has done, although by contract he was to be paid only on the completion of the work; which rule, so far as it discharges a party from the penalty of a bond, is illustrated by the cases of *Carpenter* v. *Stevens*, (12 *Wend.* 589;) *People* v. *Manning*, (8 *Conn.* 297;) *People* v. *Bartlett*, (3 *Hill*, 570.) But accidental fire has not in our courts been held to be as the act of God.

*Jones* v. *Judd*, (4 *N. Y. Rep.* 412,) was a case in which the act of the law was held to excuse complete performance. The defendant had contracted with the state to complete certain sections of the Genesee Valley Canal; he made a sub-contract with the plaintiff by which they were to be paid monthly, according to the work to be done, except ten per cent, which was not to be paid *until the final estimate.* The work was stopped by the state, and the plaintiffs sued for the ten per cent on that part of the work which they had done, and they recovered. They had done all that they were to do, had done all that the law allowed them to do, and in getting the ten per cent, recovered pay for only that which they had actually done, and for which the defendants could receive compensation from the state. It was only the day of payment that was postponed until the final estimate, and the estimate was prevented by the law. The court said the plaintiffs were entitled to recover for the work performed at the contract price. The ten per cent was a part of the price stipulated. It was reserved to secure the fulfillment of *the contract*, and to be paid upon a final estimate. The performance of the required condition became impossible by the act of the law, and, of course, the plaintiffs were entitled to recover without showing a compliance with the agreement in that particular.

In Massachusetts the courts infer a severance of the contract and an acceptance of the work done, in cases where our courts would not; hence a rule more favorable to the workman, applies there than here. Thus in *Lord* v. *Wheeler*, (1 *Gray's Mass. Rep.* 212,) the plaintiff had agreed to repair a house

Niblo *v*. Binsse.

for him to complete the contract. But, is accidental fire so deemed " the act of God," as to be received as a legal excuse for the non-performance of a contract ? The latest case in our courts, bearing upon this subject, is that of *Tompkins* v. *Dudley*, (25 *N Y. Rep.* 272.) In that case, the court of appeals decided, where one has agreed to build a house on the land of another, and has substantially performed his contract,

for the defendant, and to be paid in two installments; the first payment was made, but before the work was completed the buildings were destroyed by fire, and the defendant had in the meantime entered into the use and occupation of the house by his tenants. The plaintiff was allowed to recover for the work done. The court, after stating some views which would require explanation, if those herein expressed are correct, conclude by saying : " The precise ground on which the plaintiff can recover in this case is, that when the repairs upon the house were substantially done, and before the fire, the defendant by his tenants entered into and occupied it, and so used and enjoyed the labor and material of the plaintiff, and that such use and enjoyment was a severance of the contract, and an acceptance *pro tanto* by the defendant."

It is well settled in our courts that when a builder is to be paid on the certificate of an architect, he must produce the certificate ; and in *Smith* v. *Brady*, (17 *N. Y. Rep.* 173,) where the builder was to erect cottages in a certain manner, and to be paid the last installment when all was completed and the certificate of the architect produced, and the architect gave no certificate, and the work was not done in the manner required, it was held that the owner taking possession of the cottages did not of itself amount to a waiver of the certificate, and the report of the referee in favor of the builder was set aside.

In Massachusetts the taking of the possession would be deemed a waiver and a severance of the contract, if necessary to the plaintiff's recovery; with us at most it would be deemed some evidence of such waiver, and in itself alone not sufficient to constitute a waiver in law.

At common law a lease of a house and lot continues in force, even if the house be destroyed by fire, and the tenant remains liable to rent, but if the lease is only of a room in the house, and the house is destroyed by fire, the lease expires and the tenant is discharged as to future rents. But even in the latter case the tenant's liability still turns on the contract, and if the rent is payable quarterly he is bound to pay only the rent up to the last quarter day before the fire, and not to the day of the fire, as rent is not apportioned in respect of time and for a reason not peculiar to rents but applicable to all contracts, that " it is an entire contract which can not be apportioned." This principle would still limit the recovery of the plaintiff

Niblo *v.* Binsse.

but, before he has completely finished the house or delivered it, it is destroyed by accidental fire, he is liable to an action for damages for non-performance. In other words, accidental fire is not deemed in legal acceptation " the act of God." In that case, undoubtedly, nothing rendered it impossible for the contractor to complete the performance of his contract ; noth-

to the amount, the payment of which by the contract had matured before the fire.

It seems just at first view to say that the workman should be paid for his work, and that the owner of the building should pay it and protect himself by insurance. As to insurance, that is equally open to the workman, and if that be laid out of view, then it is the case of two innocent persons, one of whom must sustain the loss, and there is no more justice in throwing it on one than on the other in such case ; it would be a stretch of power to make one pay who had not contracted to pay under such circumstances.

As the court of Massachusetts say, in *Lord* v. *Wheeler*, above quoted, as to certain cases, " It by no means follows that if the work is partially done when the casualty occurs, a party having contracted to do the entire work for a specific sum, can recover for the partial performance. It may well be that both must lose, the one his labor and the other the thing on which it has been expended."

I conclude, therefore, I. That where a plumber agrees to do plumbing work to a house, then being about to be erected, and to furnish the materials for a gross sum, to be paid for in installments, the two last installments to be paid as follows : $1500 when all the work shall be completed, and the bal ance, $1000, when the work shall be tested and found to be sufficient, according to the provisions of the contract, the payment to be made upon the certificate of a certain architect, that they are due according to the contract, and a substantial part of the work to be done is not yet finished, when an accidental fire occurs and the work has not been tested, and no certificate of the architect is produced, the plumber can recover no part of the $1500 or $1000.

II. That the owner of the buildings having leased them, before they were erected, to a tenant who was to pay rent as soon as the hotel (part of them) should be finished and fit for occupancy, at which time possession should be taken by the tenant, and the tenant watching over the work in part, and the landlord also at times watching it, and a concert room (not part of the hotel,) and on part of which a portion of the work was done, being so far finished as to produce income ; these facts do not alter the rule of law.

III. That the rule *res pereat domino*, like many others referred to, and borrowed from the civil law, applies only when no special contract is made, but that in our courts a special contract controls such general rules.

IV. That accidental fire is not regarded in the same light as the act of God."

ing prevented him from rebuilding ; he could recommence his work, and, without aid or interference from others, and without being obliged to depend necessarily upon any co-operation from any source, he could prosecute the work until the house should be rebuilt.     In the case before us, however, the assignor of the plaintiff could not recommence plumbing work in a house which was destroyed by fire.     Unquestionably, the fire rendered it impossible for him to do this ; that is, it was impossible for him to do it on the thing stated in the contract. That thing no longer existed ; and so far it is evident that a material difference obtains between the circumstances of the present case and that to which I have referred.     But, the essential ground of the rule allowing any excuse for the non-performance of contracts, is not the simple impossibility of the performance, but whether the impossibility was caused by " the act of God" — " the act of God" signifying any inevitable accident occurring without the intervention of man ; being considered to mean, in the law, something in opposition to the act of man, as storms, tempests, and lightning. "Every thing, indeed, as Lord Mansfield says, in *Forward* v. *Pittard*, (1 *T. R.* 31,) is the act of God that happens by his permission ; every thing, by his knowledge."     But, in legal acceptation, the act of God is such an act as could not happen by the intervention of man.     Every other kind of impossibility, the law requires of every man who contracts to perform any work for another, *to provide against in his contract.*     Where, indeed, the law creates a duty or charge, and the party is disabled from performing it, without any default in himself, and has no remedy over, then the law will excuse him ; but, where the party, *by his own contract,* creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident or delay by inevitable necessity, because he might have provided against it by contract, and the law will no more rectify or supplement, than it will create, contracts, except in cases of fraud or mistake.     In *Harmony* v. *Bingham*, (2 *Kernan*, 108,) the court, after quoting the authorities in

support of this principle, adds that "this principle has been uniformly followed, and that, too, even in cases in which its application has been considered by the court as attended with great hardship." The only exception which has ever been acknowledged is where a party has contracted to do a thing, which the act of God, in the sense which I have mentioned, has rendered it impossible for him to do. This is the substance of what the courts say in all the cases, insisting, as I have said, that the party should provide against all other contingencies in his contract.

The English cases, to which the counsel for the plaintiff refers, are not in point, and if they were, and contravened the principle which I have traced, they would not be law. I take the same view of them which the referee takes in his opinion. In *Menetone* v. *Athawes*, (3 *Burr.* 1592,) it does not appear that there was a contract to complete the repairs on the ship; it must be inferred that the shipwright was employed from day to day to perform the work. The dock, indeed, in which the ship was undergoing the repairs, belonged to the shipwright, but the owner of the ship had agreed to pay £5 for the use of it; so that, as Mr. Justice Wilmot remarked, "it was like a horse that a farrier was curing, being burned in the owner's own stable."

Nothing appears in that case inconsistent with the idea that the owner of the ship could have discharged the plaintiff on any day during the progress of the work, and could have employed any other shipwright to complete it. He in fact for the time being owned the dock.

In *Lord* v. *Wheeler*, (1 *Gray*, [*Mass.*] 282,) to which the counsel for the plaintiff so confidently refers, the court expressly state "the precise ground on which the plaintiff can recover in this case is, that when the repairs upon the house were substantially done, and before the fire, the defendant by his tenant entered into and occupied it, and so used and enjoyed the labor and material of the plaintiff that such use and enjoyment were a severance of the contract and an ac-

ceptance *pro tanto* by the defendant." Where there is an acceptance of so much of the work as is completed, it is undoubtedly reasonable to consider this fact a modification or severance of the contract, so as to render the acceptor liable for the payment of what has been accepted and enjoyed, and the relinquishment of his right to insist upon the entire completion of it before he should pay for it; although I doubt whether the course of decisions in this state would warrant any of our courts in following this decision. But there is no evidence in the present case sufficient to show that La Farge ever so completely availed himself of the work as to amount to an acceptance of it. The facts stated by the referee do not constitute an acceptance of the work, or a severance of the contract, or show a. waiver of the right to demand a full compliance with its requirements.

The judgment should be affirmed, with costs.

