## CURTISS and others *vs.* PRINDERVILLE.

The consignee to sell, of corn then on board a vessel, on selling 10,000 bushels thereof, to G. March 18, 1867, gave a receipt for the price, in which he agreed to store the corn free, and deliver it in store free of all charges (except that he was not to insure it,) until the opening of navigation. On the 10th of April, 1867, the corn being still in the vessel, G. sold to the plaintiffs 2000 bushels thereof and received payment. It was mentioned in the bill of sale "Insurance 7 days," and that the plaintiffs were to "pay insurance after the 13th, $2000." The corn was at that time insured against loss or damage on board the vessel, to the amount of $2400, until May 1, 1867. G. on selling, gave an order on the vessel to deliver the corn " free of storage until the opening of canal navigation," which order was accepted by the master. On the 19th of April the corn was, by the direction of the consignee, and without notice to the plaintiffs, transferred to an elevator, where it was destroyed by fire, without any insurance upon it while there. The elevator was a fit and proper place of storage.

*Held* 1. That as to the storing of the corn there was no breach of the agreement; the agreement not specifying where it was to be stored, and it having been stored in a suitable place.

2. That as to the delivery of the corn, the accidental destruction of it by fire was a legal excuse for its non-delivery.

3. That it was not the duty of the defendant, as owner of the vessel, to notify the plaintiffs of the intended transfer of the corn to the elevator; the custom on that subject not applying to property which has been stored on a vessel through the winter.

4. That the rights of the parties depended upon the contract, which was to store free, and deliver in store free of charges, and the action being upon the contract it could not be maintained without proving a breach.

MOTION for a new trial, on exceptions ordered to be first heard at a general term.

The action was brought on a contract to deliver, on demand, two thousand bushels of corn; breach, neglect and refusal to deliver.

The bark *Golden West*, and her cargo, some 15,000 bushels of corn, were owned by the defendant; J. N. Comstock was master and S. S. Guthrie consignee to sell. The bark arrived in Buffalo harbor, near the close of navigation on the lakes, in 1866, and wintered in the harbor. March 18, 1867, Guthrie sold to Abraham S. Griffin 10,000 bushels of the corn, mentioned in the receipt of

Curtiss *v.* Prinderville.

the price as "corn on board the bark *Golden West* now lying in Buffalo Creek, which corn I agree to store free, and deliver in store free of all charges (except that I am not to insure it,) until the opening of navigation." This instrument was signed L. S. Guthrie. On the 10th of April Griffin sold to the plaintiffs 2000 bushels of the corn, and received payment. The corn was still in the *Golden West*. It was mentioned in the bill of sale "Insurance 7 days," and "Curtis & Co. pay insurance after the 13th, $2000." The plaintiffs proved that the corn was insured against loss or damage on board the vessel, to the amount of $2400, until May 1, 1867.

When Griffin sold, he gave an order directing bark *Golden West* to deliver the corn, "free of storage until the opening of canal navigation." This order was "accepted March 23, 1867, J. N. Comstock, master." The bark was lying in front of the New York and Erie elevator, and on the 19th of April, by the direction of Guthrie, the consignee, the corn was transferred to the elevator. The plaintiffs had no notice of the transfer, and no insurance on the corn in the elevator, and during the night of the 19th of April, the elevator and corn were destroyed by fire. The plaintiffs demanded the corn; it was not delivered, and this action was commenced. Some evidence was given as to the practice or custom to give notice of intention to remove grain from the vessel to the warehouse, and of Guthrie's promise to see that the plaintiffs should have notice, which is sufficiently noticed in the opinion.

The court nonsuited the plaintiffs, and they excepted.

*Geo. Wadsworth,* for the plaintiffs.

*Geo. B. Hibbard,* for the defendant.

*By the Court,* MARVIN, P. J. It is conceded that the title to the corn passed from the defendants to Griffin and

Curtiss *v.* Prinderville.

from Griffin to the plaintiffs, and the question arises upon the agreement entered into by the consignee, Guthrie, " to store (the corn) free, and deliver in store free of all charges (except that I am not to insure it) until the opening of navigation." This agreement was contained in the receipt given for the price of the 10,000 bushels of corn sold to Griffin. · The corn, at the time of sale, was in the bark *Golden West*, and this fact is mentioned in the receipt. The plaintiffs, in their complaint, after alleging that they were the owners of the corn, which was in the possession, care and custody of the defendant, allege that the defendant for a good consideration, promised and agreed to deliver the corn to the plaintiffs whenever the same should be demanded of him. A demand and refusal are then averred. Nothing is said, in the complaint, of the agreement to store free, and deliver in store free of charges, and I do not understand it to be claimed that Guthrie became an insurer and was to deliver the corn in any event or be liable for its value. On the contrary, he stipulated that he was not to insure it. I do not understand that there would have been any claim made against Guthrie or the defendant if the corn had been destroyed aboard of the bark. True, the plaintiffs could then have looked to the insurance they had upon the corn. It was proved that the elevator in which the corn was stored was a fit and proper place of storage. The complaint then is that the corn was transferred from the bark to the elevator by direction of Guthrie, without notice to the plaintiffs, and it being destroyed the defendant was unable to store it free and deliver it in store free of charges, until the opening of navigation. In my opinion, as to the storing the corn, there was no breach of the agreement. The agreement does not specify where the corn should be stored, and it was stored in a fit and proper place. As to the delivery of the corn, the destruction of it by fire was a legal excuse for its non-delivery. The plaintiffs were the owners of the corn, and the defendant,

Curtiss *v.* Prinderville.

or Guthrie, occupied the position of bailee, and no charge was to be made for storing and taking care of the corn. If the defendant's duty as bailee of the corn was broken, it seems to me that the complaint should have stated the facts raising the duty, and a breach of such duty. But waiving the question of pleading, was it the duty of the defendant to notify the plaintiffs of the intended transfer of the corn to the elevator? The agreement certainly did not require this. The plaintiffs were permitted to give evidence as to a custom requiring notice when grain is to be put into an elevator; and Griffin stated generally that it was the custom to notify the owners of the grain when the vessel is ready to elevate it. On cross-examination he said he did not know of any case where notice was given that corn would be elevated when it was stored in the vessel through the winter. Deeves, a witness, stated that the consignee or captain gives notice to the owners of a cargo when the vessel arrives, and before it is stored; that considerable grain is kept on vessels during the winter, and put into the warehouses in the spring, as the opening of navigation approaches; that he did not know, of his own knowledge, of a case of giving notice of elevating grain when it was stored on vessels through the winter.

The court decided, as matter of law, that the plaintiffs had given no evidence from which the jury could find a custom of vessel owners or shippers to notify consignees or owners of grain of an intended transfer of grain from the vessel to an elevator or warehouse; and to this the plaintiffs excepted. Perhaps this was not the question raised or intended to be raised. If the evidence tended to prove a custom, it was that the consignee or captain gave the notice. The attention of the court was not called to the distinction. Whatever there may be touching a custom, I am inclined to think it had no application to this case. So far as the evidence tended to prove a custom, it seems that the custom was connected with the arrival

of the vessel, and when it is ready to deliver it to a warehouse. The owner of the cargo has the right to direct where his property shall be stored, and this is undoubtedly the reason of the practice or custom. But suppose the cargo is consigned to A. to be delivered to B. the owner, and A. should discharge the cargo into a safe and proper warehouse, and then notify B. that his property had arrived, and where he would find it; would this constitute such a breach of duty on the part of the agent as to render him or the ship owner liable for the value of the property, in case it should be destroyed by fire? The custom, whatever it was, did not, I think, embrace this case. It did not apply to property situated as the plaintiffs' property was. It had been stored through the winter in the vessel, and there was no evidence of any custom applicable to such a case. Besides, I think the rights of the parties depended upon the contract (assuming now that the defendant was liable upon the contract made by Guthrie.) The contract was to store free, and deliver into store free of charges. The place of storage was at the option of Guthrie. This was the contract, and it contained no stipulation that notice of an intended change in the place of storage should be given. The action is upon the contract, and without a breach of the contract it cannot be maintained. The only breach was a failure to deliver, and the law excused that, on the ground of a destruction of the property. It may be well to say that Guthrie did inform Griffin, the person to whom he sold the 10,000 bushels of corn, of the intended transfer, but he did not inform the plaintiffs, the vendees of Griffin, of the 2000 bushels.

The counsel for the defendant makes the point that the defendant was not liable upon the special agreement made by Guthrie to store the corn free, &c. as the agent had authority only to sell the corn. As I am of the opinion that the nonsuit was right, on the ground I have been considering, I will spend no time with this question.

There were one or two exceptions taken by the plaintiffs during the progress of the trial, but they were not well founded.

The motion for a new trial must be denied, and the defendant must have judgment.

[ERIE GENERAL TERM, February 8, 1868. *Marvin, Lamont* and *Barker,* Justices.]