## DEXTER *vs.* NORTON and others.

Upon a sale of specific articles, the title vests in the purchaser. And that being so, it is well settled that the loss, if any, follows, or attaches to, the title.

The vendor becomes simply a bailee, and cannot, where there is no fault on his part, be liable by reason of the destruction of the bailment. CLERKE, P. J., dissented.

THIS action was brought by George Dexter, the buyer, against Norton, Slaughter & Co., the sellers, to recover damages for the non-fulfillment of an executory contract of sale.

The plaintiff alleged, in his complaint, that on the 5th day of October, 1865, the defendants agreed to sell and deliver to the plaintiff a large quantity, viz., 607 bales of cotton, bearing certain marks and numbers specified in the contract, for the price of 49 cents per pound, and 14 bales of other cotton, having certain other marks and numbers specified in the contract, at 43 cents per pound, all to be paid for on delivery. That by custom the purchaser had ten days within which to call for a delivery of the cotton, and that the time agreed upon for the delivery of this cotton was the 17th October, 1865. The defend-

ants proceeded to deliver the cotton, and delivered 460 bales, and failed to deliver the remaining 161 bales. That the cotton was of different qualities and values, and that the 161 bales not delivered were worth $9630 more than the price thereof fixed by the contract, which sum is the amount of damages claimed.

The answer denies the custom set up and relied upon in the complaint, and states what the custom is. The answer further denies, that the 17th day of October was fixed upon, by the agreement of the parties, for the delivery of the cotton. It also denies the demand, and the readiness of the plaintiff to receive and pay for the cotton within the ten days succeeding the agreement of sale, as required by the custom. It asserts, however, that after the expiration of the ten days, namely, on the 16th day of October, the defendants sent to the plaintiff an order upon the store-keeper for the delivery of the cotton, which was accepted, and that in the night of that day the warehouse wherein the cotton was stored, together with the cotton, was destroyed by fire, without the fault of the defendants.

The answer also denies that the plaintiff has sustained any damages by reason of the premises, and the value of the cotton is claimed by way of counter-claim.

On the 5th October, 1865, as appears by the brokers' memorandum, 621 specific bales of cotton, bearing certain marks and numbers, were bought by sample by the plaintiff of the defendants. By the custom prevailing among dealers in cotton in the city of New York, the plaintiff had ten days within which to call for a delivery. This custom, therefore, would have required the plaintiff to call for a delivery on or before the 15th October. They did not call for a delivery until the 16th. On that day they received a delivery order from the defendants. The order of delivery seems, from the testimony, to be this: The purchaser sends an order on the seller for delivery; thereupon the seller sends an order on the warehouse.

Dexter *v.* Norton.

If in his own warehouse, he proceeds to put the cotton in order. This process is the same wherever it may be. The seller finds the weighmaster and the menders; the buyer finds the sampler. The seller puts the cotton in order; damaged cotton is picked out; it is examined to see if it agrees with the sample, the bagging made whole, or new bagging supplied, if necessary. It is then weighed. The delivery of the cotton seems to have been commenced on the 16th October, but how much was delivered on that day does not appear. On the night of that day 161 bales were destroyed by fire. Subsequently, and as soon as the insurance companies would allow, between that day and the 25th, all the remainder of the cotton was delivered and received.

The plaintiff proved a demand of the 161 bales, and a refusal, on the ground that such delivery had been rendered impossible, by the destruction of the cotton by fire. Cotton had risen in price since the day of the sale, and the increase of value on the 161 bales amounted to about $9600. It was to recover this that the action was brought.

At the close of the plaintiff's case, the defendants' counsel moved for a dismissal of the complaint on two grounds:

*First.* That it did not appear that the plaintiff had demanded his cotton within ten days from the sale, and that he had, therefore, lost his right to enforce the contract.

*Second.* That a fulfillment of the contract by the sellers had become impossible by the destruction, without their fault, of the subject matter of the sale, and they were therefore excused from the obligation to perform their agreement.

The learned judge held, as to the first ground of the motion, that even if the usage were to be interpreted as claimed by the defendants, so as to conclude the buyer, in general, from the privilege of enforcing a demand made after the lapse of the ten days, yet, in this particular case,

Dexter *v.* Norton.

that rigor was waived, and the time extended, by the ac-
quiescence of the parties.

As to the second ground, he held the point well taken;
and dismissed the complaint, saying that although, for
the purposes of the motion, he must assume that the title
to the property did not pass, yet that this was "a sale of
specific property, of bales of cotton, according to their
marks; that the delivery of no other property than the
property called for would have satisfied this contract, and
that the destruction of the property by fire relieved the
party from his obligation to perform the contract;" and
that this action, therefore, could not be maintained. The
plaintiff excepted to his ruling.

The exceptions were directed to be heard in the first
instance at a general term, and judgment in the meantime
suspended.

*James C. Carter,* for the plaintiff. I. As to the first
ground upon which the dismissal was moved. The de-
fendants' counsel wholly misinterpreted the effect of the
usage proved. It operated simply to suspend, in favor of
the buyer, the right of the seller to take steps toward the
enforcement of the contract. 1. Aside from the usage, by the
true construction of the contract, either party had the right
to forthwith tender performance on his part and demand
performance on the part of the other. The party upon
whom the demand was thus made would be obliged to
perform within a reasonable time; and a refusal or failure
to so perform would constitute a breach. 2. Either party
would certainly have a reasonable, if not an indefinite,
time, after the making of the contract, in which to make
his tender and demand performance of the other. 3. There
is nothing in the usage proved fixing any time for the per-
formance by either party. The right of the seller is sim-
ply suspended for ten days, doubtless for the purpose, the
sales being for cash, to enable the buyer to provide the

means of payment. After the expiration of the ten days, the rights of the parties stand as they would without the usage. Either can enforce performance against the other within a reasonable time. 4. Upon the interpretation propounded by the defendants, what becomes of the seller's right to enforce performance ? He has no such right within the ten days; has he any after the lapse of the ten days ? If there be any such right in him after that time, we have the anomaly, unintelligible, inconvenient and mischievous, of a contract of sale which one party only can enforce. And for how long, pray, has the seller the right to keep the buyer upon the tenter-hooks, in continual fear of a demand upon him by the seller, obliged to keep his money ready and subject to the fluctuations of the market, and with no power to put an end to such an embarrassing predicament? 5. On this construction of the rights of the parties the contract is turned into a succession of *options*, and we have the buyer with the right to enforce it for the period of ten days, during which the seller cannot move; and then the seller, with a right to enforce it during an indefinite period, during which the buyer cannot move. 6. The true interpretation is the one already suggested, by which the ten days is treated as a grace allowed to the buyer, which ceases at the expiration of that period, and both parties then stand upon an equal footing, either being at liberty to put an end to the suspense by calling upon the other to perform. And the rights of both would probably expire, if neither exercised his privilege within a reasonable time. (*Jones* v. *Gibbons*, 8 *Exc.* 920. *Benjamin's Sale of Pers. Prop.* 519.) It is manifest that the witnesses all thus understood the matter, and particularly the defendant Norton. The only doubt and confusion arose from the circumstance that none of them ever knew of a case in which the seller had refused to deliver on the ground that the buyer had failed to call for a delivery during the ten days, although such failures were a mat-

ter of frequent occurrence. This circumstance is very natural and probable, in our view, but quite the contrary on the view of the defendants.

II. But, even on the defendants' view, it was entirely competent for the parties, by mutual assent, to *enlarge* the time for performance, and it was clear that they had done so; or, what is enough for the present purpose, evidence was given sufficient to warrant the jury in finding such extension. It was not until the matter fell under the astute scrutiny of legal gentlemen that this point was discovered. The defendants themselves never dreamed of placing their refusal on this ground. Besides, the contract was in part executed. This, of itself, is a complete waiver.

III. To come to the merits. The contract was an executory agreement for the sale of merchandise. Many certain things remained to be done in respect to the merchandise, by the sellers, before delivery. None of these things were done in respect of the 161 bales in question. It follows that, as to those, the title had not passed at the time of the destruction by fire. (*Joyce* v. *Adams*, 8 *N. Y. Rep.* 291. *Rapelye* v. *Mackie*, 6 *Cowen*, 250. *Simmons* v. *Swift*, 5 *B. & C.* 857. *Rugg* v. *Minett*, 11 *East*, 210. *Benjamin's Sale of Pers. Prop.* 221.) It follows, as a corollary from the foregoing, on the maxim *res perit domino*, that the loss occasioned by the fire fell upon the defendants, in whom the title rested. Whether they were still bound to perform their contract to deliver, or respond in damages, is a further question. (*Joyce* v. *Adams, supra*, and authorities last above cited; and *Gerard* v. *Prouty*, 34 *Barb.* 454.)

IV. We are thus brought to the main question. It is not entirely clear that the contract was to deliver specific chattels, although the bales were designated by marks; for the sale was by sample, and perhaps any cotton conforming to the sample, and bearing the marks, would answer the purpose. But, for the sake of the argument,

let it be conceded that the sale was of specific goods. The case, then, is this : The defendants voluntarily assumed an unconditional obligation to sell and deliver certain specific goods, the title to which did not pass by the contract. This obligation was susceptible of performance at the time it was made. Performance subsequently became impossible, by reason of the occurrence of an accidental fire. The learned judge held this a sufficient excuse for the non-performance. It is respectfully submitted that this was a clear error. I. It is an established rule that where a man voluntarily takes an obligation upon himself, by contract, which, at the time, was capable of performance, it is no excuse for the non-performance of such obligation to allege and prove that it subsequently, and without his fault, became difficult or impossible for him to perform it. In our jurisprudence there is no dissent from this doctrine. From the multitude of authorities to this effect, the following are selected: *Harmony* v. *Bingham*, (2 *Kern.* 99 ;) *Tompkins* v. *Dudley*, (25 *N. Y. Rep.* 272 ;) *Dermott* v. *Jones*, (2 *Wall. U. S.* 1 ;) *Story on Contracts*, § 975, *and cases cited; Niblo* v. *Binsse*, (44 *Barb.* 54; *S. C.* 1 *Keyes*, 476 ;) *Notes to Cutter* v. *Powell*, (*Smith's Leading Cases*, 6th *Am. ed.*, *p.* 50 ;) *Cohen* v. *Gaudet*, (3 *F. & F.* 462, *n.;) Hadley* v. *Clarke*, (8 *T. R.* 267 ;) *Atkinson* v. *Ritchie*, (10 *East*, 530 ;) *Airy* v. *Merrill*, (2 *Curtis' C. C.* 8 ;) *Hall* v. *Wright*, (1 *Ellis, B. & Ellis*, 746 ;) *Spence* v. *Chadwick*, (10 *Q. B.* 517 ;) *Logan* v. *Le Messurier*, (6 *Moore's S. C.* 116.) 2. The reason upon which this doctrine rests is manifest. The high importance of holding the binding force of contracts inviolable in all cases needs no argument or illustration. And why should parties be relieved in any case from burdens which they voluntarily assumed, and might have refused? The doctrine does not extend to cases where the law casts the duty upon the party. 3. Two exceptions to the universal application of the rule above declared are allowed. It is where the performance of the contract has been made unlawful, or

Dexter *v.* Norton.

where such performance has been prevented by the act of the other party. 4. Another exception is sometimes stated, namely, where the performance of the contract has been made impossible by the "act of God." But this is both obscure and doubtful. There seems to be an inclination sometimes among jurists to attribute to the Almighty what cannot be distinctly charged upon any one else. It would be better for them to follow the advice which Horace gives to dramatic authors, not to introduce a God upon the stage except in a crisis worthy of such an awful intervention.

> " Nec deus intersit, nisi dignus vindice nodus
> Inciderit." ·* * * * *

5. But, whatever may be truly embraced under the phrase, "acts of God," it is very certain that an accidental fire is not. What propriety there is in attributing to such a source what in many cases is the felonious work of some enemy alike of God and man, is not manifest. (*Niblo* v. *Binsse, ubi supra.* 2 *Pars. on Mar. Law,* 180, 181.) 6. The case of carriers by land and water is not an exception. The "acts of God" and the public enemy are, by the terms of their undertaking, excepted. 7. The case of bailees is not an exception. Their duty, which the law casts upon them, is only to exercise a certain degree of care. But if they voluntarily undertake to redeliver the thing bailed in safety, impossibility subsequently occurring does not excuse them. 8. A class of peculiar contracts relating to personal services constitutes an apparent, but not a real exception. Such contracts as that of an author who undertakes to write a work, of a painter to paint a picture, or the bond of a father that his son shall serve as an apprentice, contain an implied condition that the author &c. shall live, &c. (*Note to Cutter* v. *Powell,* 2 *Smith's Lead. Cas.,* 6 *Am. ed.* 50.) The ground for introducing such an implication into contracts of this class is, that the continued life of the party rendering the service was mani-

festly in the contemplation of the parties when the contract was made, and that it could not have been intended by them that a claim for damages should arise in case of death, blindness or other incapacity supervening, because of the difficulty, not to say impossibility, of reaching any correct estimate of the damages. 9. Sales of goods "to arrive" are not an exception. Such contracts are conditional upon their face. (*Benjamin's Sale of Personal Property*, 432.) 10. The claim sought to be enforced in this action would not, perhaps, have been sustainable, if the title to the cotton had passed. The defendants would then have stood in the position of bailees, and the maxim, "*res perit domino*," would have governed; and it is the general rule that when there is a bargain for the sale of specific goods, and a day for the delivery is fixed, or nothing said about delivery, the title passes at once, and the risk is afterwards, even before delivery, upon the seller. (*Bayley, J., in Simmons* v. *Swift, supra. Park, B., in Dixon* v. *Yates*, 5 *Ad. & El.* 313, 340.) The rule that where anything remains to be done to the goods by the seller, (as in our case,) the title does not pass, is an exception to the general doctrine. 11. Hence, whenever it is said that if, after a bargain and sale of goods, and before delivery, the goods are destroyed, as by fire, without the fault of the seller, the obligation of the seller is discharged, such a bargain and sale is intended as passes the title. (*Appleby* v. *Myers, Ex. Ch.*, 2 *Law Rep. C. P.* 653. *Taylor* v. *Caldwell*, 2 *B. & S.* 826.) 12. The cases in which the question now discussed has arisen are chiefly of two classes: *First*, where the party who has been unable to perform himself seeks relief, as plaintiff, as where a man sues for the consideration of work partially performed, and he is met with the objection that he has not performed up to the point which entitles him to the consideration; and, *second*, where the promisee brings his action to recover back an advance payment, or to recover damages

Dexter *v.* Norton.

for the non-performance by the promisor. But the rule is applied alike in all cases. 13. The Roman law on this subject was different. But the contract of sale under that system was a very different thing from ours. However complete the bargain might be, the title never passed until delivery. The seller of a specific chattel was called *debtor,* and the buyer *creditor certi corporis;* and from the time of the contract the buyer was entitled to all the increase, and subject to all the diminution and risks which might affect the subject of the sale. If the property was lost or destroyed before delivery, without the fault of the seller, the loss fell upon the buyer, who was still obliged to pay the price. (*Pothier, du Contrat de Vente, parte* IV. *Blackburn on the Contract of Sale, chap.* III. *Benjamin's Sale of Personal Property, chap.* VII.)

V. If the question were open to argument, no fair reason could be shown for rescuing the contract of sale, such as the one in question, from the operation of the rule above shown to be so universal and absolute. 1. If it be said that it is absurd to call upon a man to do what is plainly impossible, the answer is, that the rule only requires the performance of the contract, or damages for the non-performance. It simply pronounces the excuse insufficient. 2. To the plea of hardship, the answer is, that the law disdains such a plea as an excuse for the performance of a contract voluntarily entered into. It estimates at a higher rate, and for higher reasons, the sacredness of engagements. But there is no hardship about it. The loss, to the extent of the contract price of the goods, must, it is conceded, fall upon the sellers. The only question is, whether we shall have the benefit of our contract by recovering the difference occasioned by the rise in the market value. 3. The known practice of merchants is universal to insure goods held by them for sale under such circumstances. The sharp objection made to our proving upon the trial that these goods were insured,

and that the defendants collected the insurance, may furnish some intimation of whether the goods in question were insured, and the insurance collected. The amount recoverable from the underwriters in such cases is the full .market value at the time of the loss; so that if these goods wer: insured, the defendants have recovered, and now have in their possession not only the contract price of these goods, but also the very increase in value for which this action was brought. This is the hardship of being obliged to fulfill contracts in this class of cases. 4. The cotton having risen in value to the extent, on 161 bales, of nearly $10,000, if the defendants were insured, if the rule of law be as is claimed by the defendants, they are the gainers by the fire, and the excuse it affords, of nearly $10,000. No better illustration could be furnished of the solid reason of the doctrine that fire is not an " act of God;" such reason being, that it is not the policy of the law to attribute to the Almighty any act which could or might have been occasioned by man. The doctrine claimed by the defendants would constitute a most tempting reward for setting fire to property. (1 *Pars. on Mar. Law,* 181, 183.) 5. Of course there is no way in which we could reach any portion of the moneys received from underwriters. The plaintiff was not entitled to the benefit of that contract. And by the usage in the city of New York, the plaintiff could not, before the delivery of the goods to him, or the passage of the title, have insured them for his own benefit. 6. The circumstance that in the case of inability to perform a contract for the sale of specific merchandise, the damages are capable of so exact an estimate, (being measured by the difference between the contract price and the market value at the maturity of the contract,) and the further circumstance of the perfect efficacy of the contract of insurance to protect the seller from loss, take away all grounds for any implication that there was an

unexpressed condition in the contract that the goods should continue to exist.

VI. The reasoning of the defendants proves altogether too much. Their position is, that the goods having been destroyed by a fire occurring without their fault, the contract has become incapable of performance by circumstances beyond their control, and so they are relieved from their obligation. 1. Of course it would make no difference, should it be proved that the fire was caused by the felonious act of a stranger. 2. And the principle would be precisely the same, if the goods, instead of being destroyed by fire, had been feloniously stolen by a stranger and removed, no one knew where. 3. It is manifest, therefore, that the principle asserted by the defendants has this full extent, that if it has become impossible to perform the contract in consequence of any event, even the act of a third person, which has arisen without the fault of the promisor, he is excused from his obligation and not bound to pay damages.

VII. If the foregoing argument is well founded, the exception should be sustained, the dismissal of the complaint at the trial set aside, and a new trial ordered, with costs to abide the event.

*W. W. McFarland,* for the defendants. I. There is but one point in the case, and that is whether, where specific goods are bargained for, and they are destroyed by accident before the completion of the sale, an action can be maintained by the purchaser against the seller to recover damages for a non-delivery? No one has ever before supposed that this could be done; there seems to be no precedent for such an action, and this action would seem to be an entirely novel experiment.

The books abound with cases as to the question upon whom the loss shall fall in such a case, whether the purchaser or the buyer. And this question invariably turns

upon another question, which is this: In whom was the title at the time of the destruction of the property? If in the purchaser, he is bound to pay the purchase money, though the subject matter is destroyed. (*Thompson* v. *Gould,* 20 *Pick.* 139. *Hinde* v. *Whitehouse,* 7 *East,* 558. *Rugg* v. *Minett,* 11 *id.* 210.) If in the case at bar, therefore, the defendants would have been able to show that the title to the cotton destroyed by fire had vested in the plaintiff before the fire, they could have maintained an action against him for the purchase money; but as the title had not vested in the defendants, the agreement as to the cotton destroyed was extinguished, and the defendants, the sellers, had to sustain the loss.

The duty of the vendor, pending the execution of a contract of sale, is to exercise reasonable diligence in keeping the property safe and in proper condition for delivery, (for, doubtless, if he caused the property to be destroyed by his own improper conduct, he would not be allowed to take advantage of his own wrong, but a remedy in some form would exist,) and to be ready to deliver it at the time appointed. But, it is to be observed, that there is no suggestion of any fault or delay on the part of the seller, notwithstanding the fact that he might have refused to deliver, on the ground that the cotton was not called for within the time when the order to deliver was received on the 16th; it was not rejected, but accepted and delivery commenced. The loss of part by fire is not claimed to be due to any fault or negligence on the part of the sellers.

II. It is also to be observed, that the sale was of a specific lot of cotton by sample, particularly designated and described by marks and numbers, and not of so many bales or pounds of cotton, generally. The purchaser clearly would not have been bound to receive, nor was the seller bound to deliver, any other cotton.

III. When there is an executory contract for the sale

Dexter *v.* Norton.

of specific chattels, and before delivery they are, without fault of the vendor, destroyed, so' that delivery becomes impossible, the obligation of the vendor is extinguished. This is a plain and elementary principle, never before controverted, recognized both by the common and civil law, and expressed with great elegance and precision by an eminent civilian, in the following terms : "Of the loss or extinction of the thing. According to the principles established in the *Treatise on Obligations,* (*part* 3, *ch.* 6,) if one sells a specific thing, the obligation to deliver it is an obligation of a thing certain, and will be extinguished if the thing perishes without the fault of the seller, and before he is put in delay to deliver it, for there can be no duty when there is no longer a debt which is due. If any part of the thing remains, the seller will be bound to deliver that part." (*Pothier on Cont. of Sale, art.* 4, § 1, *p.* 31. *Pothier on Obligations, Evans' ed., p.* 486. *Zagury* v. *Furnell,* 2 *Camp.* 240. *Domat's Civil Law, by Strahan, p.* 219, *art.* 335 ; *p.* 220, *art.* 337.)

IV. If the title to the thing has not passed from the vendor to the vendee, as was the case here, the loss falls on the former ; but where it has passed, the latter is bound to pay the purchase money. Inasmuch as no title passed in this case, and the seller for that reason could not call upon the purchaser for the purchase money, the inquiry as to whether the cotton was insured, which was objected to and excluded, and which is the subject of an objection, was not pertinent to the issue, and was properly excluded. (*Domat's Civil Law, p.* 221, *art.* 339.)

V. It is obvious that the court below did not err in applying these plain and elementary rules to the case at bar, and dismissing the complaint.

CARDOZO, J. I think there can be no doubt that this case was correctly disposed of at the circuit. It was conceded on the argument that the sale was of specific articles,

and that the title vested in the vendee. That being so, it is well settled that the loss follows or attaches to the title. The vendor becomes simply a bailee, and cannot, where there is no fault upon his part, be liable by reason of the destruction of the bailment. (*Curtiss* v. *Prinderville*, 53 *Barb.* 186.)

The judgment should be affirmed.

GEO. G. BARNARD, J., concurred.

CLERKE, P. J., (dissenting.) It was conceded, I think, at the trial, that the title to the destroyed cotton had not passed to the purchaser (the plaintiff.) At all events, it appears to me clear, from the evidence, that it did not pass to him. The mere transference of the order for delivery was not sufficient; other acts remained to be done, which were essential to perfect the title. After the order was given, the vendors had to proceed to put the cotton in suitable condition, by picking off the damaged portion of it, if any, sewing up and mending the bagging and ropes, and supplying new, if necessary, and putting it in proper condition, generally, for actual delivery. They had also, in the presence of the sampler furnished by the vendee, to compare the bulk with the samples, by which it was purchased, and pass it, if found to conform to the sample. Then it was necessary to pass it to the scales, to be weighed by the owner's weigher, and then to send the bill, with the weigher's return, to the vendee. Indeed, the judge at the trial expressly held that the title to the destroyed cotton had not passed, "because there remained other acts to be done, which were essential to perfect the title.".

The judge dismissed the complaint solely on the ground "that the sale was of specific property, of bales of cotton according to their marks; that the delivery of no other property than that called for would have satisfied the con-

tract, and that the destruction of the property by fire relieved the party from his obligation to perform the contract."

This, in my opinion, is entirely at variance with the whole current of common law authority upon this subject. As I took occasion to say, in *Niblo* v. *Binsse,* (44 *Barb.* 54,) "From the earliest period of our legal history, no excuse for non-performance has been recognized, except where the performance has been rendered impossible by the act of God, by the act of the law, or by the act of the other party; or, in the language of Coke, (*Coke Litt.* 206,) 'in all cases where a condition is possible at the time of making it, and before the same can be performed, the condition becomes impossible by the act of God, or of the law, or of the obligee, &c., there the obligation is saved.'" But accidental fire is not deemed, in legal acceptation, the act of God. This was distinctly held in *Tompkins* v. *Dudley,* (25 *N. Y. Rep.* 272,) by the Court of Appeals; and in *Niblo* v. *Binsse,* the case to which I have referred, the same principle was recognized, although the judgment of the general term was reversed on another point. (1 *Keyes,* 476.) The distinction is well expressed by LAWRENCE, J., in *Hadley* v. *Clarke,* (8 *T. R.* 267,) "Where the *law* creates a duty or charge, and the party is disabled to perform it, without any default in him, and hath no remedy over, there the law will excuse him; but when the party, *by his own contract,* creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity; because he might have provided against it by his contract." In *Harmony* v. *Bingham,* (2 *Kern.* 108,) the Court of Appeals, after quoting the authorities in support of this principle, adds that "this principle has been uniformly followed, and that, too, even in cases in which its application has been considered by the court as attended with great hardness."

This principle applies to contracts of sale, in which the

property is specially designated, as well as to those in which it is not designated; although the civil differs from the common law, in this respect.

The dismissal of the complaint should be set aside and a new trial ordered; costs to abide the event.

Judgment affirmed.

[NEW YORK GENERAL TERM, November 1, 1869. *Clerke, Geo. G. Barnard* and *Cardozo*, Justices.]