By the Court.—Vah Vorst, J.
When the plaintiff *561 rested his case, the defendant moved to dismiss the complaint on the ground of the failure of the plaintiff to put in proof the certificate of the inspectors appointed Tby the Croton Board and by the water purveyor required by the contract.
The motion was granted, the complaint dismissed, and the plaintiff excepted.
The contract entered into between the defendants, by the Croton Aqueduct Board, party of the first part, and James Saxton, party of the second part, under which the work and materials are claimed in the complaint to have been done and furnished by the plaintiff, provided among other things that the Croton Board should “appoint’’'' such person or persons as they might deem necessary to" properly inspect the materials to be furnished and the work to be done, and to see that the same corresponded with the specification set' forth in the contract. Such inspectors were to supervise each subdivision of the work, “whether such subdivision be the cutting of the blocks, or the excavation for and preparation of the foundation, or the laying of the pavement, or otherwise.’ ’
It was also provided in the contract “ that the party of the second part should not be entitled to demand or receive payment for any portion of the aforesaid work or materials until the same shall be completed in the manner set forth in the agreement, and each and every one of the stipulations therein mentioned were complied with, and such completion duly certified by the inspectors employed on the work, and by the water purveyor, whereupon the party of the first part should pay, etc.”
In Smith v. Brady (17 N. Y. 173), the provisions of the contract were that the balance of the moneys was to be paid thereunder “when all the work should be completed, and certified by the architect to that effect.”
In that case the work was held to be substantially *562 completed in fact; yet as the parties had agreed to make the production of such certificate a condition precedent to the payment, the plaintiff was-held hound by that provision in the contract as any other.
Unless, therefore, the plaintiff produced on the trial the certificates of the inspectors and water purveyor provided for in the. contract, or has satisfactorily accounted for or excused their production, the ruling of the learned judge was correct, and the' complaint properly dismissed.
The right was reserved to the Croton Board under the contract “ to appointand it was their duty to keep inspectors on the work, and upon application by the plaintiff when the work was fully completed, according to the contract and specifications,to cause the inspectors to furnish such certificates, and if there was any unreasonable or obstinate refusal to furnish same, the plaintiff having faithfully performed his contract, such refusal would constitute an excuse for the non-production of the inspectors’ certificate.
When the strict performance of a condition precedent is unreasonably prevented by the other party, its performance should be excused (People v. Bartlett, 3 Hill, 570 ; Niblo v. Binsse, 44 Barb. 54; Moses v. Bierling, 31 N. Y. 462; Glacius v. Black, 50 N. Y. 148 ; Cohen v. Mutual Life Insurance Co., 50 N. Y 621).
There was no evidence of any distinct "appointment of inspectors for the work by the Croton Board. The result of an examination of their records fails to show any designation of persons for this service.
The legitimate manner in which bodies, such as the Croton Aqueduct Board should act in the public interest in a matter of this character, would properly be evidenced by some formal records, which would leave no room for doubt or controversy as to the persons appointed and authorized to perform the service of inspection.
*563 But the evidence shows that after the plaintiff had collected on the ground the stone and material for the whole work, and had prepared the road bed for the pavement, and on the morning, and as soon as he began to lay the stone blocks, one McCoskey, ‘ ‘ in the employment of the Croton Board,” gave directions to two young' men, whose names are not given, who were there as inspectors, to pave with two rows of guide stones.
How these men were appointed does not appear.; but they acted under McCoskey. - ■
This direction was unsatisfactory to the plaintiff, who removed the- second, and commenced to pave with one tow of guide stones.
McCoskey then gave directions to the inspectors to stop inspecting the work, and they stopped.
The work was suspended for a few days, when by the direction of the mayor, or “ other city authorities,” other inspectors were sent to the work, which was resumed by the plaintiff, and was completed in ¡November, 1869, and within the time prescribed in the contract.
The new inspectors, with a city surveyor, Bozle, remained on the work until its close. The inspectors furnished to the plaintiff certificates of inspection, which were by him filed with the comptroller, with the certificate of Bozle, the surveyor, and the plaintiff received from the financial officer of the city in ¡December, 1869, the sum of one hundred and four thousand dollars, being seventy per cent, of the contract price for the work .and materials, leaving still due thereon a balance of forty-six thousand three hundred and eighty-seven dollars, for which this action is brought.
It.may well be questioned whether McCoskey was justified in removing the two inspectors under the cir-cumstances detailed in the evidence, and whether he was right in insisting that the contractor should pave with two rows of guide stones. There is nothing in the ■contract or specifications which requires such method of, *564 doing the work, nor is there anything in the case from which it appears that it was necessary for the completion of the work according to the contract, that two rows of guide stones should be used.
There is a clause in the contract which provides " that if, at any time, the said board shall be of opinion, and shall so certify in writing, that the said work or any part thereof is unnecessarily delayed, or that the said contractor is wilfully violating any of the conditions or covenants of this contract, or is executing the same in bad faith, they shall have the power to notify the aforesaid contractor to discontinue all work under the contract, or any part thereof, and thereupon the said contractor shall cease to. continue said.work,” etc.
But the evidence fails to show that the board did at any time " certify ” in writing that they were of opinion that the contractor was wilfully violating any of the conditions or covenants of the contract, or that he was-executing the same in bad faith.
The adoption of a preamble and resolution on the subject, and the service of a paper, purporting to be a. copy thereof, on the plaintiff, signed by their secretary, is not such a certifying of an opinion by the board as is required by the contract, so as to justify a discontinuance of the work by the contract.
The requirement of the contract in this regard could be best answered by a writing' expressing the opinion of the board signed by its members. Justice to the contractors and their own responsibilities in the premises would seem to demand that.
The evidence shows that the work was well done, and according to the contract and specifications.
And if the only difficulty in the case was the non-production of certificates of inspectors shown to be ap-. pointed by the Croton Board, it might well be held that the certificates of “the inspectors employed on the work” would be sufficient under all the circumstances *565 of this case, and would dispense with the production of others. For, as has already been observed, it was the duty of the Croton Board “to appoint” and keep inspectors on the work, which was not done.
But the non-production of a certificate from the •‘water purveyor” is not accounted for or excused, and would appear to be a fatal objection to the plaintiff’ s right of recovery. The “ water purveyor ” did not hold his appointment under the Croton Board. He was an independent officer, appointed by the Board of Aldermen, Act of April 11, 1849 (Laws of N. Y., 1849, p. 539, § 7). He was the chief officer of a distinct "bureau. This officer was charged with specific duties, amongst others with the superintendence of paving, repaving, and repairing streets (Hoffman's Laws of N. Y, vol. 1, 278). Ñor was the office abolished by the provisions of the act reorganizing the local government of the city of Hew York, passed April 5, 1870, when the Department of Public Works was created, into which the Croton Board was merged. The continuance of such "bureau and distinct chief officer is recognized by that act (Laws of N. Y.0, 1870, vol. 1, pp. 384, 385, § 77, 79).
■ It is true that the plaintiff on the trial stated that he thought there was no such officer at the time,—that he had not seen him on the work.
But the legal presumption is that the office was filled, and the witness Dork swears distinctly that Hanforth Horton was “water purveyor” in the year 1869.
The right of the plaintiff to demand and receive payment depends as much upon the production of a certificate from the “water purveyor” to the completion of the work in the manner set forth in the contract as from the inspectors. It is an additional guard which the defendants had a right to interpose for the faithful performance of the contract, and the stipulations in respect thereof are obligatory upon the plaintiffs.
Heither the certificate of the Commissioner of Public *566 Works provided for in the Laws of N. Y., 1871, (vol. 2,1235, latter part of § 5), nor the certificate of the commissioners under chap. 580 of the Laws of N. Y., 1872 (vol. 2, p. 1412), certifying that “they are satisfied that no fraud has been perpetrated in relation to said contract or in the performance thereof,” dispenses with the-production of such certificate from the “ water purveyor.”
The judgment appealed from should be affirmed, with costs.
Curtis, J., concurred.