On the 31st of August, 1857, Cornelius Chambers, by a written contract, agreed to make, erect, build and furnish for the plaintiffs a school-house, according to certain plans and specifications, and to furnish the materials for the sum of $678.50. The school-house was to be completed on the 1st day of October, 1857. The defendants guaranteed the performance of the contract on the part of the builder. The building was not completed on the 1st day of October, and it was burned down on the night of the 5th of October. The judge who tried the cause found, as matter of fact, that the contract was substantially performed by Chambers, but that the building was not entirely completed according to the specifications, there remaining to be done a small amount of painting and the hanging of the window blinds, and that the same had not been formally accepted nor the key delivered on the *Page 273 
5th of October. This action is brought to recover the money paid on account to Chambers as the building progressed, and for the damages which the plaintiffs have sustained by reason of the non-completion of the contract, the fulfillment of which was guaranteed by the defendants. It is undeniable that the school house was not completed, nor delivered and accepted by the plaintiffs at the time of its destruction. They had a right to insist upon the completion of the contract according to its terms, and the builder did not allege or pretend that he had completed it. A substantial compliance with the terms of the contract will not answer when the contractor, as in this case, admits and concedes that the work was incomplete; he was still in possession, engaged in its completion. According to the testimony, about $60 was yet to be expended on the building. Had the builder completed the building and complied with his contract at the time of the destruction of the school house? I am constrained to say he had not. He was not only to complete it in accordance with its terms, but was to deliver it over to the plaintiffs thus finished, or offer to deliver it, before his whole duty was performed. Now it is undeniable that the builder did not do this. A portion of the work was yet to be done; the builder was still in possession, and actually engaged in the work of completion at the time of its destruction. This court has declared the law in this State to be, that a contract for the building of a vessel, or other thing in esse, does not vest any property in the party for whom it is to be constructed during the progress of the work, nor until it is finished and delivered, or at least ready for delivery, and approved by such party. It is said all the authorities agree in this. (Andrews v. Durant, 1 Kern., 35, and the authorities there cited.) And it was also held that the law is the same, though it be agreed that payment shall be made to the builder during the progress of the work, and such payments are made accordingly. In Mucklow v. Mangles (1 Taunt., 218), which arose out of a contract for building a barge, the whole price was paid in advance, the vessel was built and the name of the person who contracted for it was painted on the stern, *Page 274 
yet it was held that the title remained in the builder. LAWRENCE, J., said, "No property vests till the thing is finished and delivered." In Merritt v. Johnson (7 John., 473), where a sloop was agreed to be built and one-third of the price was to be paid when one-third of the work was done; two-thirds when two-thirds were done; and the balance when it was completed, and before it was finished it was sold on execution against the builder, after more than one-third had been done, and more than that proportion of the price had been paid, the court held that the vessel was the property of the builder and not of the person who engaged it to be constructed. The court says, in its opinion, "The sloop did not become his property (the person for whom it was built) until finished and delivered." The Supreme Court of Massachusetts, in Adams v. Nichols (19 Pick., 275), a case quite like the present, say: "It is not very material to consider whose property the house was before its destruction. The principal defendant had contracted to build and finish a house on the plaintiff's land. After the conflagration, he might have proceeded, under the contract, and if he had completed a house according to the terms of his agreement the plaintiff would have been bound to perform his part of the stipulations. So if in any stage of its progress he had seen fit to remove any part of the materials, and substitute others, the plaintiff could not complain. They must, therefore, be deemed to be at his risk. And if he had not intended to incur this risk, he should otherwise have stipulated in his agreement. Had the article to be made been a chattel, or a coach, or a vessel, it is extremely clear that the materials in the first place, and the article itself, in every stage of its manufacture, from its inception to its completion, would have been at the risk of the builder. Now it is not easy to preceive how it can make any difference in the construction or operation of the contract, that the thing manufactured, was to be attached to the freehold."
The builder, in the present case, by his own contract, created a liability and incurred a duty, which the defendants guaranteed *Page 275 
he should perform, and which he has not performed. In justification of such non-performance, he alleges the destruction of the building by fire and inevitable accident, without any fault on his part. The law is well settled, that this is no legal justification for the non-performance of the contract. This subject was most carefully considered and elaborately discussed in the case of Harmony v. Bingham (2 Kern., 99), and it was then held by this court, that when a party is prevented by the act of God from discharging a duty created by the law, he is excused; but when he engages unconditionally, by express contract, to do an act, performance is not excused by inevitable accident or other unforeseen contingency not within his control. EDWARDS, J., says: "This rule has been uniformly followed, and that, too, even in cases in which its application has been considered by the court as attended with great hardships." RUGGLES, J., said: "It is a well-settled rule of law, that when a party, by his own contract, absolutely engages to do an act, it is deemed to be his own fault and folly that he did not thereby expressly provide against contingencies, and exempt himself from responsibility in certain events; and in such a case, therefore, that is, in the instance of an absolute and general contract, the performance is not excused by an inevitable accident or other contingency, although not foreseen by or within the control of the party." These principles have been applied by the Supreme Courts of Massachusetts, Connecticut and New Jersey, in cases almost entirely analogous to the one now under consideration. InAdams v. Nichols (supra), the action was upon a bond executed by Nichols, one of the defendants, as principal, and by Selkirk, the other defendant, as surety, conditioned that Nichols should fully perform an agreement in writing, by which he contracted to erect a dwelling house for the plaintiff, on the plaintiff's land. It was agreed that, at the time of the execution of the bond and agreement, the plaintiff advanced to Nichols the sum of $400, in pursuance of such agreement; that subsequently Nichols commenced building the house and continued to work on it until 23d of August, 1836 (the agreement *Page 276 
having been made October 5, 1835), at which time it was raised and principally covered, and materials prepared for finishing it; that on the night succeeding that day, the house was, from some cause unknown to both parties, wholly destroyed by fire, and that Nichols did not offer to rebuild the house. The trial was had before SHAW, Ch. J., who ruled that the destruction of the house did not constitute a legal defence to the action, and a verdict was taken for the plaintiff, by consent, subject to the opinion of the court. MORTON, J., in delivering the opinion of the court, says: "The defendants do not pretend that they have executed their contract to build a house for the plaintiff, but contend that the facts disclosed furnish a legal excuse for not doing it. * * * In these and similar cases, which seem hard and oppressive, the law does no more than enforce the exact contract entered into. If there was any hardship, it arises from the indiscretion or want of foresight of the suffering party. It is not the province of the law to relieve persons from the improvidence of their own acts. * * * The original contract remaining in force, and there being no legal excuse for not executing it, the defendants are liable for the damage which the plaintiff sustained by the non-performance of it."
In the case of School District No. 1 v. Dauchy
(25 Conn., 530), the defendant, on the 7th day of December, 1853, made a contract in writing with the plaintiff to build the school house for the sum of $2,469, and to complete the same by the first Monday of May, 1854; a part of the price to be paid by instalments, as the work progressed. The defendant commenced the building of the same, and had nearly completed it, when, on the 27th of April, 1854, it was struck by lightning and consumed by the fire communicated thereby. At this time he had received $1,000 of the price, having been entitled thereto, under the contract, by the progress of the work. ELLSWORTH, J., in delivering the opinion of the court, says: "The defendant did agree, absolutely and unqualifiedly, that the building should and would be completed and ready to be delivered to the plaintiffs, by the first Monday of May *Page 277 
at the furthest. This he has not done. The building has not been completed nor delivered, although it is true he nearly finished it, and it is found could and would have completed it, had it not been destroyed by lightning. In the contract, he made no provision for any contingency or event whatever, and the question is, can he now incorporate into his contract a provision for a contingency or a condition, or must he abide by his positive and absolute undertaking." After an able discussion of the question, and a careful review and analysis of the cases bearing upon it, the learned judge came to the conclusion that the defence set up affords no justification for the non-performance of the contract, and that the plaintiffs were entitled to recover their damages by reason of a breach thereof.
The only additional case needful to refer to, is that ofSchool Trustees of Trenton v. Bennett (3 Dutcher [N.J.], 514). In that case a person had contracted with the owner of a lot to build, erect and complete a building thereon, and by reason of a latent defect in the soil the building fell down before it was completed, and the Supreme Court of New Jersey held that the loss fell upon the contractor, and that when the contract was, by its terms, to build and complete a building, and find materials for a certain entire price, payable in instalments as the work progresses, the contract is entire, and if the building, either by fault of the builder or by inevitable accident, is destroyed before completion, the owner may recover back the instalments he has paid.
The court, in its opinion, says: "No rule of law is more firmly established by a long train of decisions than this, that where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." And in reference to the argument of hardship, the court very justly says: "No matter how harsh and apparently unjust in its operation the rule may occasionally be, it cannot be denied that it has its foundation in good sense and inflexible honesty. The party that agrees to do an act should doit, unless absolutely impossible. *Page 278 
He should provide against contingencies in his contract. When one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it, or, rather, the law leaves it where the agreement of the parties has put it; the law will not insert for the benefit of one of the parties, by construction, an exception which the parties have not, either by design or neglect, inserted in their engagement. If a party, for a sufficient consideration, agrees to erect and complete a building upon a particular spot, and find all the materials, and do all the labor, he must erect and complete it, because he has agreed so to do."
I arrive at the conclusion that the law is well settled that the defence interposed by the defendants constitutes no justification to Chambers, the builder, for the non-performance of his contract with the plaintiffs, and that, having guaranteed for an adequate consideration, expressed therein, its performance, they are liable to respond to the plaintiffs for the damages which they have sustained by reason of such non-performance. If these views are concurred in by my brethren, the judgment appealed from must be reversed, and a new trial should be had, with costs to abide the event.
WRIGHT, GOULD, ALLEN and SMITH, Js., concurred.
Judgment reversed, and new trial ordered.