## NIBLO *v.* BINSSE.

December, 1864.

Reversing 44 *Barb.* 54.

Where one party to an executory contract has, by his own act or default, prevented the other party from fully performing his contract, the party thus preventing performance cannot take advantage of his own act or default to exonerate himself from paying for what has been done under the contract.†

If the owner of a building contracts for labor upon it, he is under an implied obligation to have the building ready and in a condition to receive the labor contracted for; and if, before the work is completed, the building is destroyed by fire, without the fault of the contractor, the owner is in default, and the contractor can recover for all that was done up to the time of the fire.‡

William Niblo, as assignee of Anthony E. Hitchings, sued

---

* Compare Marvin *v.* Marvin, and Mason *v.* Ring, in this volume.

† Compare Hooker *v.* Bank of Rochester, 30 *N. Y.* 83. See, also, Chase *v.* Hogan, 8 *Abb. Pr. N. S.* 57; Marsh *v.* Holbrook, in this vol.; and Howell *v.* Gould, vol. 2 of this series, p. 418.

‡ As to freshets and frost, see N. H. & Northampton Co. *v.* Quintard, 6 *Abb. Pr. N. S.* 128; Worth *v.* Edmonds, 52 *Barb.* 40. As to fire, see Dexter *v.* Norton, 47 *N. Y.* 62; affirming 55 *Barb.* 272.

John Binsse and Louisa La Farge, executors of John La Farge, in the supreme court, for services and materials under a contract with the defendants' testator.

The referee found the following facts.

Hitchings agreed with the testator, by contract dated April 14, 1853, that Hitchings should, by October, 1853, furnish and set up in the La Farge House and Metropolitan Hall, then building by testator in the city of New York, steam engines, pumps, and heating apparatus, &c., pipes and coils, under superintendence of an architect named, for which the testator was to pay him ten thousand dollars; as follows: seven thousand five hundred dollars in installments, as certain parts of the work should be completed; fifteen hundred dollars when all was finished, and the balance when the work was "tested and found to be sufficient according to the provisions of this contract;" said payments to be on the certificate of the architect that they were due according to the agreement.

Hitchings began the work, and continued in the execution of it until January 7, 1854, when the whole buildings were destroyed by fire without any fault upon the part of La Farge or of Hitchings. La Farge had in the mean time paid Hitchings, on account of the work, seven thousand five hundred dollars, without any certificate of the architect. Of this sum one thousand dollars was paid October 24, 1853, and fifteen hundred dollars on December 15, 1853, while the work was going on, but after the time when it was to have been finished, by the terms of the contract. At the time of the fire the work and materials necessary to complete the contract would have cost about one thousand dollars. Previous to the fire the concert room had been used for concerts several times, and when so used was heated by the apparatus Hitchings had put in; but the hotel had not been opened for guests.

After the fire La Farge retained for his own use the remains of the iron pipe which was put into the building by Hitchings, and sold same to the latter for one thousand dollars.

Hitchings assigned to the plaintiff his claim to recover the balance of the ten thousand dollars, to be paid by the terms of the contract, for the whole work; whereupon the plaintiff brought this action. The referee decided in favor of the de-

fendants, because the work was never fully completed; and judgment accordingly was entered, from which the plaintiff appealed.

*The supreme court*, at general term, affirmed the judgment, holding that Hitchings was in default by not having finished the work according to the contract, and that his failure to perform was not due to the act of God, of the law, or of *the other party*, and that the plaintiff's assignor should have provided against such a contingency by a clause in the contract. Reported in 44 *Barb.* 54. From this judgment plaintiff appealed to this court.

*E. P. Cowles* and *W. F. Allen*, for plaintiff, appellant;—Cited Carpenter *v*. Stevens, 12 *Wend.* 589; People *v*. Manning, 8 *Cow.* 297; People *v*. Bartlett, 3 *Hill*, 570; Jones *v*. Judd, 4 *N. Y.* 411; Merritt *v*. Clayhorn, 23 *Vt.* 177; *Story on Bailm.* § 426; Menetone *v*. Athawes, 3 *Burr.* 1592; Gillett *v*. Mawman, 1 *Taunt.* 137; Cutter *v*. Powell, 6 *T. R.* 380; Wilson *v*. Knott, 3 *Humph.* 473; Lord *v*. Wheeler, 1 *Gray* (*Mass.*) 282; Greene *v*. Linton, 7 *Port.* (*Ala.*) 133; Wolfe *v*. Howes, 20 *N. Y.* 197; Smith *v*. Brady, 17 *Id.* 173; 2 *Kent Com.* 694, note.

*T. J. Glover*, for defendants, respondents;—Cited Tompkins *v*. Dudley, 25 *N. Y.* 272; 2 *Pars. on Cont.* 184, note 4; Andrews *v*. Durant, 11 *N. Y.* 35; Smith *v*. Brady, 17 *Id.* 173.

BY THE COURT.—T. A. JOHNSON, J.—It was held, both by the referee and the supreme court at general term, that the plaintiff was not entitled to recover, merely because the work was not finished and the job completed at the time the building, upon which the work was being done, was destroyed by fire. To my mind, this is a very plain case in favor of the plaintiff. The decision, very properly, was not put upon the ground that the work was not completed within the time specified in the agreement, but upon the naked ground that the contractor, having failed to do all the work he had contracted to do, could not maintain the action. It is plain, upon the facts found, that the time of performance had been ex-

tended by the mutual assent of the parties to the contract.
When the time expired the agreement was not rescinded or ter-
minated by the owner of the building, but the contractor was
allowed to go on under it, and in performance of it, until the
building was destroyed by the fire. Payments were made in
the mean time, and the contract treated as in all respects in
force by both parties. The work was in progress, and nine-
tenths of the labor and expense had been performed and in-
curred when the further prosecution of the work was arrested
and its completion prevented, by the destruction aforesaid. The
case is to be treated, therefore, precisely as though the destruc-
tion of the building had occurred before October 1, 1853, when
by the terms of the contract the work should have been
finished. No principle of law is better settled than this, that
when one party has, by his own act or default, prevented the
other party from fully performing his contract, the party thus
preventing performance, cannot take advantage of his own
act or default and screen himself from payment, for what has
been done under the contract. The law will imply a promise
on his part to remunerate the other party for what has been
done, and support an action upon such implied promise. 2 *Pars.
on Cont.* 35.

This case falls exactly within this principle of law. Through
whose default was it that the work was not completed accord-
ing to the contract? Certainly not that of Hitchings, the
contractor; for he was ready and willing, and was in act of
performing, when prevented by the destruction of the build-
ing. He was a mere laborer upon the building, having no
possession or control over it for any other purpose; and the
destruction of it was through no act or agency of his. Mani-
festly the performance of the contract was prevented by the
default of the other party, who furnished and provided the
building upon which the work was to be done, as far as the
work had progressed, but failed to furnish or provide it for the
completion of the work. It was his building, in his possession,
and under his exclusive control; and, as a material and sub-
stantive part of his contract, he was to have it in existence
ready for the work, and continue it in existence, and in a
proper condition for the work to be performed upon it, as

long as it was necessary under the contract, or as long as the contract was continued in force by the consent of the respective parties. If one party agrees with another to do work upon house, or other building, the law implies that the employer is to have the building in existence upon which the work contracted for may be done. It is necessarily a part of the contract on the part of such employer, whether it is specified in it in terms or not. Here the defendant's testator failed to provide and keep the building till the work could be completed, and thus,—and thus only,—was performance prevented.

It is nothing whatever to the case to say that the building was not destroyed through his agency or fault. That fact is no test of the liability in an action like this. It would not excuse or shield the defendants from liability, even were the action to recover as damages the profits which might have been made on that part of the work, the performance of which was prevented. The destruction was not caused by the act of God, as appears by the facts found; and a default from any other cause will not excuse non-performance.

This rule was applied and enforced by this court in Tompkins v. Dudley, 25 N. Y. 272, very properly, undoubtedly, though the case was a very hard one for the defendants. The school-house, which they had contracted to build, was substantially finished, according to the contract, but it had not been accepted by the plaintiffs; a small amount of painting and the hanging of the window-blinds remaining to be done, before the job was finished. In this situation the house took fire and was destroyed, and the plaintiffs were allowed to recover back moneys they had advanced on the contract, and damages for its non-performance. It was a casualty not provided against in the contract, which the defendants had bound themselves fully to perform. This rule, it will be seen, applies with full force against the defendants in this action, but in no respect is it applicable to the plaintiffs. The defendant's testator was to provide the building in which the work was to be done. That was part of his obligation, and he had not provided for the contingency of its accidental destruction during the continuance of the work, by his agreement. The plaintiffs' assignor had no occasion to provide, in the contract, for the

default of the other party in the performance of his part of the obligation. The law provides for that. It was never heard that the contract must provide against the default of a party, in order to give a remedy to the other party who is affected injuriously by it; unless, indeed, some extraordinary remedy is sought, which the law, without an express stipulation, does not give. The obligation of the defendant's testator seems to have been entirely overlooked in the supreme court, or else it was assumed that the destruction of the building did not place him at all in default, unless he had some agency in such destruction, by which the performance was prevented. This I regard as a fallacy, and it is this, obviously, which produced the erroneous judgment against the plaintiff.

The case of Menetone *v.* Athawes, 3 *Burr.* 1592, is very much in point here. The plaintiff was employed to make certain specified repairs upon a vessel lying at his own ship-yard. Before the repairs were completed, a fire broke out in a neighboring store, and extended to the vessel and destroyed it. The defendant in that case, as in this, contended that the plaintiff could not recover, because his agreement to repair was not fully performed. But it was held, that the plaintiff was entitled to recover, *pro tanto,* for the work and materials, as far as he had gone in the performance of his undertaking. This seems to be the settled rule in all cases between bailor and bailee, when the article is delivered to the latter, to be repaired or wrought into a new form, and is accidentally destroyed before the work is finished and ready for delivery, without the fault of the mechanic. The loss in such case falls upon the owner of the article, and he must answer for the labor already bestowed and the materials, if any furnished. 2 *Kent Com.* 590; *Story on Bailm.* § 426, *a;* Gillett *v.* Mawman, 1 *Taunt.* 137. It may perhaps be different in such a case, where the work is done upon an express contract as a job, because the owner by delivering the article to the mechanic has done all he could do. He has performed so far all that was within the contemplation of the parties, and all the law could require of him, and it would be impossible for the mechanic in possession to allege that he was prevented from performing by any act or default of the owner. See *Story on Bailm.* § 496, *b.* His non-

performance in that case, not being occasioned by the act or default of the other party, it is difficult to see how, according to our rule, he could maintain the action. But it is manifestly entirely different where the owner of the property retains possession and contracts for work to be done upon it while in his own custody. In such case there is an implied obligation resting upon him to have it on hand and in readiness for the labor to be performed upon it. That is the case put by WILMOT, J., in Menetone *v.* Athawes, *supra,* "of a horse which a farrier is curing, and which is burned in the meanwhile in the owner's own stable," as one in which the owner would undoubtedly be liable for the skill and care bestowed. The work is not completed, because the owner, whose duty it is to keep the article on hand in order to receive the labor and skill upon it, fails to do so, and is in default. That is this case, in effect. The difference in the nature of the property upon which the work was to be performed, does not affect the principle.

When full performance is prevented by the authority of the State, the party may recover for his labor and materials, up to the time the State interferes and stops the work. Jones *v.* Judd, 4 *N. Y.* 411. I lay no stress whatever upon the fact that the owner used the building more or less while the work was in progress, because in this State the rule is well settled that use and occupancy constitute no ground of liability if the contract is not performed. Smith *v.* Brady, 17 *N. Y.* 173. And if the non-performance was occasioned by the act or default of the other party, use and occupancy are of no moment. Nor is it of any consequence, in my judgment, that the defendant's testator kept the iron pipes, which the other party had placed in the building, and sold them after the fire. They were clearly his property, made so by being placed in his building under the contract. And his using them or disposing of them after the destruction of the building does not, in any way that I can perceive, affect the question of his liability.

I rest the right of the plaintiff to maintain his action distinctly upon the ground that his assignor was prevented from performing his contract by the default of the other party in failing to keep on hand and in readiness the building in which

the work was to be done, and that the other party was clearly in default whether the building was destroyed with or without fault on his part. If these views are correct, the action should have been sustained, and the plaintiff allowed to recover for his labor and materials according to the contract, as far as he had gone, deducting the amount paid, and perhaps any damages which the owner may have sustained in consequence of the non-performance by the time stipulated in the contract. The judgment must, therefore, be reversed, and a new trial granted, with costs to abide the event.

All the judges concurred.

Judgment reversed, and new trial ordered, costs to abide the event.