Peedle, J.,
delivered the opinion of the court:
The contract, made part of the petition herein, provides for the construction of the stone masonry of the walls of the superstructure of the court-house and post-office building in the city of Pittsburg.
The work thereon was divided into three divisions, designated as the first, second, and third divisions; the first division *616 embraced the masonry of the superstructure of the building, from the water table to the top of the second-floor line; the second division was from the seeond-floor line to the top of the third-story cornice; and the third division being all the masonry work above the last-named point to complete the building.
From an examination of the statutes making appropriations from time to time to continue the prosecution of the work, it is evident that the work was divided as indicated, in order that such appropriations mig’ht not be exceeded in the prosecution of the work. (Act August 7, 1882 (22 Stat. L., 302, 305); act March 3, 1883 (22 Stat. L., 603, 601); act August 4, 1886 (24 Stat. L., 222, 223); act March 3, 1887 (24 Stat. L., 509, 511), and numerous other acts.)
Under the terms of the contract the claimant’s decedent obligated himself to furnish all the labor and materials required to complete the first division for $64,041 and to complete the same within ten months from the time the possession of the building was given to him; and he further obligated himself, if ordered by the defendants so to do, to complete the second division for the sum of $130,414 within seven months from the date of the order for the commencement of work on said second division; and to complete the work on said third division, if ordered by the defendants so to do, within seven months therefrom for the sum of $180,517.
Pursuant to the contract thus entered into, the contractor, in September, 1886, was given possession and began work on the first division of the building, but he did not complete the same until about September 26, 1887, or a little more than twelve months from the time he commenced work. For the work so performed he was paid the sum of $45,742.60, leaving a difference Between his bid and the amount paid of $18,298.40.
About one month after he had commenced work on the first division of the building, as set forth in the findings, he was notified by the Supervising Architect that he would be required to proceed with the work on the second division.
That part of the contract material to the case is as follows:
“It is further covenanted and agreed bjr and between the parties hereto, that if the said party of the second part shall *617 fail to prosecute the work herein contracted for with such diligence as in the judgment of the party of the first part will insure the completion of the said work within the time here-inbefore provided, or shall fail to comply with any of the terms of this contract, and thereby, in the judgment of the party of the first part, hazard the satisfactory completion of the work as hereinbefore stipulated, the said party of the first part is authorized and empowered, after eight days’ due notice thereof in writing, served personally upon or left at the shop, office, or usual place of abode of the said party of the second part, or with his agent, and the said party of the second part having failed to take such action within said eight days as will, in the judgment of the party of the first part, remedy the default for which said notice was given, to take possession of the said work in whole or in part, and of whatever machinery, tools, or materials belonging to the said party of the second part and employed thereon, and to complete the said work, and to supply the labor, materials, and tools of whatever character necessary to be purchased dr supplied by reason of the default of the said party of the second part, and the actual cost thereof shall bo deducted from any moneys due or owing to the said party of the second part on account of this contract, and if that amount be not due, then the actual cost thereof shall be repaid to the party of the first part on demand. ”
In the judgment of the Supervising Architect the claimant’s decedent failed to prosecute the work with that degree of diligence which insured the completion thereof within the time provided in the contract; and availing themselves of that provision of the contract relating thereto, the defendants, through their agent, the Supervising Architect, under date of September 16, 1887, notified the contractor in writing, as set forth in the findings, that unless he took such action within eight days therefrom as would remedy his default they would take possession of the work in whole, including his machinery, tools, and materials used in connection therewith, and complete the building, and that whatever labor, material, and tools of whatever character became necessaiy therefor would be purchased or supplied and the actual cost thereof deducted from any monej^s due him on account of said contract, “and if that amount be not due, then the actual cost thereof shall be repaid to the party of the first part on demand.”
Thereafter, and about the time of the completion of the *618 ñrst division of the building, the claimant’s decedent, as set forth in the findings, notified the Supervising Architect:
“That by reason of serious complications I am unable to complete the remainder of my contract, and hereby relinquish all my rights to you under said contract as the official representative in behalf of the United States.
“And I hereby surrender to you full possession of such material, machinery, and tools which belong to me and used in connection with said work, in full compliance with the tonus of my said contract. I further surrender all my right, title, and interest in the lease of the George Candage stone quarries at East Blue Hills, Hancock County, in the State of Maine, hereby giving you full possession of said premises for the prosecution and completion of my said contract.”
On the same day the Supervising Architect informed the claimant’s decedent, that in consequence of the relinquishment of his rights under the contract, and of his surrendering and giving full possession of the material, machinery, and tools which belonged to him and which were used in connection with the work, including the quarries, aforesaid, that the defendants had taken possession of the work in whole and would complete the same.
In compliance with the terms of the contract so relinquished, the Government completed the work on the second and third divisions of the building, using therefor the machinery, tools, and materials surrendered therefor by the claimant’s decedent, and purchasing such other machinery, tools, and materials as became necessary therefor, at the cost of $4:69,055.99, which, added to the sum of $45,742.60, paid to the claimant’s decedent for the work done by him on the first division of said building, makes the total cost of $514,798.59, or $139,826.59 in excess of the bids of the claimant’s decedent therefor.
After the completion of the building the defendants sold the materials, tools, and appliances of the claimant’s decedent, as aforesaid, for the sum of $1,019.14 and paid the money into Treasury of the United States in reduction of the amount of the loss so sustained by the Government.
The claimant contends that notwithstanding the relinquishment by his decedent to the defendants of all his rights under the contract as stated, he is entitled to recover the $18,298.40 retained by the defendants for the work performed by him on *619 the first division of the building, including the additional sum of $1,019.11 for which the materials, tools, and appliances were sold as aforesaid; and in the amended petition it is averred, in substance, that inasmuch as the contractor was ordered to proceed with the work on the second division before he surrendered his rights under the contract, that therefore he is entitled to recover profits on the work performed thereon by the defendants — being,.as he avers, the difference between his bid therefor and what the work in the exercise of ordinary diligence would have cost.
By the terms of the contract the Government, upon the relinquishment by the contractor of all.his rights thereunder, was bound to carry the residue of the contract work to completion without unnecessary cost, and to account for and pay to the contractor the difference, if any, between his bid and the actual and necessary cosh of the work. Contrariwise, if the actual and necessary cost of the work performed by the defendants exceeded the amount due the contractor, he was bound to make good the difference by repayment thereof to the Government.
The contention that because the contractor was not ordered to proceed with the work on the third division, that therefore he is exempt from any liability growing out of the work thereon can not be sustained. The contractor, by surrendering his rights under the contract, thereby obviated the neces-sitjr for any such order, and having done so he can not avail himself of any benefit arising from his. own default.
Had the contractor continued the prosecution of the work and, without any fault on his part, the Government had refused to order him to proceed with the work on the third division, then, of course, no liability would attach to him for Avork performed thereon by the Government in excess of his bid therefor.
The contract must be considered as a whole, and in determining the rights of the parties must be considered as one contract, and not as a several contract applicable alone to each division of the work.
Upon the relinquishment of his contract the liability of the contractor was not thereby extinguished. He had for a stipulated sum or sums obligated himself to furnish all the *620 labor and materials necessary to complete the work covered by his contract; and, by the terms thereof, whether he continued the prosecution of the work or relinquished his rights under the contract, he was bound to make good to the Government the work thereunder at the price agreed upon. And this seems to have been the construction put upon the contract by the contractor himself, for by the findings it appears that he had free access to and examined, from time to time, the pay rolls and other accounts showing the actual expenses incurred by the .defendants in the construction of the second and third divisions of the building; and, furthermore, it does not appear that he at any time requested the defendants to keep a separate account of the expenditures on said several divisions, or that he made anj^ complaint to them that the expenditures so made were unreasonable.
After having completed the work on the first division, and after he was ordered to proceed with the work of the second division, the contractor “by reason of serious complications,” as expressed by himself, was unable to complete the remainder of his contract; and that the prosecution of the work which ho had undertaken to perform might be continued, he, in compliance with the terms of his contract, surrendered his rights thereunder to the defendants, who continued the prosecution of the work and carried the same to completion with reasonable diligence, thereby incurring $139,826.59 in excess of the contractor’s bids for the work so contracted by him to be done.
The bids of the claimant’s decedent for the entire contract by him was $374,972, whereas the bids of the three competitor's for the same work, as shown in the findings, were $379,000, $416,164, and $438,713, respectively, showing a difference between the contractor’s bid and theirs of from $4,000 to $63,000, or an average difference of more than $36,000.
The bids thus made indicate that the contractor’s bid was too low, for which he alone was responsible, and when considered in connection with the surrender of his rights under the contract would seem to rebut any anticipation of profits arising from the work on the second division, or on any of the work to be thereafter performed. And if we should adopt the claimant’s theory that profits were recoverable for work done by the defendants on the second division, even though *621 the work on the third division may largely have exceeded the contractor’s bid therefor, still we think the findings sufficiently disclose the fact that there were no profits on the work on the second division; and this view is átrengthened by the act of the contractor in surrendering his rights under the contract. No fraud or bad faith is shown on the part of the Government in the work it did.
We are constrained to hold, notwithstanding the seeming hardship on the contractor, that he was bound to make good to the Government the work he contracted to perform at the price agreed upon; and having failed in person to carry out his contract, for which the Government was in no way responsible, he voluntarily intrusted the completion of the work under the terms of his contract to the Government, who, with reasonable care and diligence, completed the work at an expense greatly exceeding the contractor’s bid therefor.
What we have said applies with equal force to the 118,298.40 retained by the Government out of the money earned by the contractor for work on the first division, for by the terms of his contract he agreed that in case the Government took possession of the work by reason of his default, the actual cost of the completion thereof should be deducted from any moneys due or owing to him on account of the contract, and further, that if that amount be not due, then the actual cost thereof he agreed should be repaid to the Government on demand. That provision of the contract precludes the claimant from recovering the sum so retained.
And as to the SI,019.14 realized on the sale of the machinery and tools of the contractor which he surrendered to the Government to be used in completing the unfinished work under his contract, we think that sum was properly applied under the terms of the contract in reduction of the amount of the loss sustained by the Government through the fault of the contractor, and no recovery can be had thereon.
Thus the position of the contractor is in effect held to be the same as though he in person had carried out his contract and suffered the loss of the difference between the amount of his bid and the actual cost of the work done. There is, however, this difference: Had the contractor completed the entire work according to the terms of his contract he would, of *622 course, have been entitled to the full amount of hite bid therefor, including the amount retained, together with his machin ery and tools, but inasmuch as he relinquished his rights under the contract, and the Government completed the work at great loss, he is in no condition to complain because the Government diminishes that loss by the application of the money in its possession which accrued for work performed by him before the relinquishment of his contract, or for the money realized from the sale of the machinery and tools which he delivered to the Government for the prosecution of the work under his contract.
The petition is therefore dismissed.
Nott, Ch. J., was not present when this case was tried and took no part in the decision.