Williams, Judge,
delivered the opinion:
The plaintiffs in this suit seek to recover the sum of $32,545.16. Their claims are: (1) $30,887.14, the cost of reconstructing one of the group of buildings being constructed by plaintiffs under a contract with the Veterans’ Bureau, which, when practically completed, but prior to acceptance by the Government, was partially destroyed by a gas ex *356 plosion; (2) $1,658.02 liquidated damages deducted by the defendant on final settlement with plaintiffs for the work done under the contract.
The plaintiffs on December 31, 1924, entered into a contract with the Veterans’ Bureau to furnish all necessary labor and material required to construct and finish complete all work of “ general construction ” of a group of buildings at the U. S. Veterans’ Hospital at San Fernando, California, in accordance with specifications covering the same, at a total cost to the defendant of $755,900. The entire work was to be completed within 350 calendar days from the receipt of official notice to begin work. The contract provided for the deduction of liquidated damages at the rate of $250 for each day of delay in completing the work beyond the 350 days stipulated in the contract.
The contract provided:
“Aeticle III. * * * All work when finished shall be delivered in a complete and perfect state. * * *
“Article XIII. * * * The contractor shall * * * be responsible for the proper care and protection of all materials delivered and work performed by him until the completion and final acceptance of same.”
One of the buildings covered in the contract, building No. 6, was designated as the Women’s General Medical Building. Three separate contracts were entered into by the United States with as many independent contractors for the plumbing, heating, and electrical work, which, Avith the plaintiffs’ work, was required to complete building No. 6. No one of the four contractors having work to do on building No. 6 was under the supervision of any one of the other contractors, and all were required to coordinate their respective portions of the work. The United States also entered into a contract with the Southern California Gas Company for the delivery of gas to the mains of the hospital during the period from November 1, 1925, to June 30, 1926.
After the award of the contract and as a basis of determining the amount of the progress payments, the plaintiffs prepared and the Veterans’ Bureau approved a schedule of costs, under the specifications of the contract, by which the *357 sum of $55,108.00 was allocated as the cost of constructing building No. 6.
The plaintiffs were notified on January 19, 1925, to begin work, which notice automatically fixed January 4, 1926, as the elate for the completion of the work. The plaintiffs duly proceeded with their work, made the required monthly progress reports, and received monthly payments of approximately 90% of the value of the work in place until October, 1925. The United States retained 10% of the monthly payments until final acceptance of the work embraced by the contract.
Shortly before eleven o’clock on the morning of December 14, 1925, building No. 6 was severely damaged as the result of an explosion caused by an accumulation of gas beneath the building. At the time of the explosion the plaintiffs had substantially completed the building, except for some sweeping, window washing, lock adjusting, painting, etc. There had been no final inspection or acceptance of the building by the United States.
On January 4, 1926, the date for the completion of the work, the United States accepted all the buildings covered by the plaintiffs’ contract except building No. 6. There was then due to the plaintiffs under their contract, including the percentage of progress payments retained, $102,655.72, which sum the United States refused to pay until building No. 6 was completed.
Immediately following the explosion the superintendent of construction requested the Veterans’ Bureau to make an investigation and determine the cause of the explosion and the responsibility for it. A board of inquiry was appointed and made an exhaustive investigation. Its conclusions, which we have found are fully sustained by the record herein, are set out in Finding IX and need not be restated in detail here. They show that the explosion which wrecked building No. 6 was caused by the negligence of two independent contractors, the plumbing contractor, and the Southern California Gas Company.
In view of the fact the explosion was not caused by any ■fault or negligence on the part of either the plaintiffs or the *358 defendant, and the obligations imposed upon plaintiffs by the contract to construct and deliver to the Government a building “ in a complete and perfect state,” plaintiffs can not recover the cost incurred by them in reconstructing building No. 6. The building at the time of the explosion had not been inspected and accepted by the Government. It is true work upon the building was substantially finished and was ready for inspection, but until its final inspection and acceptance by the Government, the plaintiffs, under Article XIII of the contract, were responsible for its proper care and protection. The Government was entitled to receive a completed building.
The rule is well settled that where a contractor undertakes to erect a building, and during the process of construction the building is injured or destroyed without fault of either party to the contract, the contractor is still bound by his undertaking to complete the building, and is liable in damages if he fails to do so. Day v. United States, 48 C. Cls. 128, 245 U. S. 159; United States v. U. S. Fidelity & Guaranty Co., 236 U. S. 512; Atlantic, Gulf, etc., Co. v. Philippine Islands, 219 U. S. 17; Simpson v. United States, 172 U. S. 372; Dermott v. Jones, 2 Wall. 1.
In Dermott v. Jones, supra, the court held that performance of a contract to build a house for another on the soil of such person, and that the work should be executed, finished, and ready for use and occupation, and to be delivered over so finished and ready to the owner of the soil, at a day named, is not excused by the fact that there was a latent defect in the soil, in consequence of which the walls sank and cracked, and the house, having become uninhabitable and dangerous, had to be taken down and rebuilt. The court said:
“ It is a well-settled rule of law that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. * * * If a tenant agree to repair, and the tenement be burned down, he is bound to rebuild. A company agreed to build a bridge in a substantial manner, and to keep it in repair for a certain time. A flood carried it away. It *359 was held that the company was bound to rebuild. A person contracted to build a house upon the land of another. Before it was completed it was destroyed by fire. It was held that he was not thereby excused from the performance óf his contract. * * * The principle which controlled the decision of the cases referred to rests upon a solid foundation of reason and justice. It regards the sanctity of contracts. It requires parties to do what they have agreed to do. If unexpected impediments lie in the way, and a loss must ensue, it leaves the loss where the contract places it. If the parties have made no provision for a dispensation, the rule of law gives none.”
Plaintiffs in the instant case covenanted with the defendant to furnish all necessary labor and material required to construct and finish complete building No. 6, and to deliver it to defendant within a stipulated time, in a complete and perfect state. The defendant, being in no way responsible for the gas explosion which wrecked the building when it was practically completed, but before inspection and acceptance by the Government, was well within its rights under the contract, in requiring the plaintiffs to reconstruct the building. The court can not relieve plaintiffs of their bounden duty to deliver building No. 6 to defendant in a complete and perfect state. Whatever losses plaintiffs may have sustained in the performance of the contract must be borne by them.
Article XXIII of the contract provides:
“As the work progresses, partial payments will be made at the end of each calendar month, or as soon thereafter as practicable.
$ $ $ ‡ ‡
“All material and work covered by partial payments made shall thereupon become the sole property of the Government, but this provision shall not be construed as relieving the contractor from the sole responsibility for the care and protection of materials and work upon which the payments have been made, nor as a waiver of the right of the Government to require the fulfillment of all of the terms of this contract. * * * ”
The plaintiffs contend these provisions in Article XXTTT make plaintiffs’ contract with the Veterans’ Bureau a sever-able or divisible contract; that title to building No. 6 had *360 passed at the time of the explosion, to the extent of that portion of the building which had been paid for by the Government, and that the plaintiffs are entitled to retain any moneys paid them under the contract which represented the fair market value of work done up to the date of the explosion and which finished work had passed into the legal possession of the Government; and that for the additional work performed by them in reconstructing building No. 6, plaintiffs are entitled to be paid for same as extra work.
The fact that progress payments were made as the work under the contract proceeded does not make the contract a divisible or severable contract. The law is well established in the Federal courts, and in many of the State courts, that a contract for the complete construction of a building for an entire price, payable in installments as the work progresses, is an entire contract, and a refusal by the contractor to complete the building entitles the owner to a return of the installments paid. United States v. U. S. Fidelity & Guaranty Co., supra.
In Peist v. Richmond, 97 Vt. 97, the court said:
“ * * * the contract, being for a finished structure for a gross sum for the work as a whole, and its complete fulfillment being manifestly contemplated by the parties as the basis of their arrangement, is an entire contract, and is not made divisible by the fact that the price for the work is payable in installments.”
This rule is announced in McGowan v. United States, 35 C. Cls. 606; Tompkins v. Dudley, 25 N. Y. 272, and Green v. Hanson, 89 Wis. 597.
While Article XXIII provides that all material and work covered by partial payments made shall thereupon become the sole property of the Government, it is specifically stated that such provision “ shall not be construed as relieving the contractor from sole responsibility for the care and protection of materials and work upon which payments have been made, nor as a waiver of the right of the Government, to require the fulfillment of all the terms of the contract.” In view of this explicit language limiting the construction *361 to be placed on the provision for partial payments, the installment payments made on building No. 6 prior to the explosion are not to be treated as payments for parts of such building, but as partial payments advanced on account of a building plaintiffs had contracted to build and deliver to the Government in a “ complete and perfect state.” The plaintiffs’ right to retain such installment payments was conditioned' on their subsequent fulfillment of the contract.
Claim, for $1,658.0%, deducted as liquidated damages. — The contract provided for the completion of the work on or before January 4, 1926, and in default of performance the contractor became liable for liquidated damages stipulated for each day of delay. Building No. 6 was completed and accepted 486 days after January 4, 1926. The contract provided for an allowance for all delays determined by the contracting officer to have been unavoidable or due to cause beyond the control and without fault of the contractor.
The chief of the construction division, an authorized representative of the Director of the Veterans’ Bureau, on October 25, 1927, determined that 395 days of the 486 days of delay in the completion of building No. 6 were unavoidable and resulted from causes beyond the contractor’s control. This determination entitled plaintiffs to an extension of time of 395 days for completion of the contract. Under the terms of the contract, as extended, the final date for completion of the work was February 3, 1927. The work on building No. 6 was completed on May 5, 1927, or 91 days after the extended date. The Comptroller General, making final settlement with plaintiffs, held that liquidated damages accrued to the United States for this period of 91 days at the rate of $250 per day, reduced in proportion to the total contract value of the work ($755,900) and the cost for construction allocated to building No. 6 ($55,108) or the sum of $18.22 per day, amounting to $1,658.02.
Article X of the contract provides:
“For unavoidable delay in the completion of the work * * * arising from causes beyond the control of the contractor, to be determined by the head of the department *362 or independent establishment, or an authorized representative thereof, * * * there shall be allowed such extension of time for completion as may be found by the head of the department, * * * or authorized representative thereof, to be equivalent to the delay or delays so occasioned, * * *.
‡ ‡ ‡ H? ❖ *
“ Provided further, * *. The extension of time provided in this article may be allowed * * * at any time before final payment, but not thereafter.”
The validity of the provision in a contract that the contracting officer, or other officer, may determine specified matters in dispute is well settled. It is likewise well settled that the decision of such officer, when made, is final and conclusive, and that in the absence of fraud or mistake so gross as to necessarily imply bad faith, such decision will not be subjected to the revisory power of the courts. United States v. Gleason, 115 U. S. 588.
The action of the Comptroller General in deducting the sum of $1,658.02 from the amount due plaintiffs under the contract was based on the decision of an authorized representative of the Director of the Veterans’ Bureau that 395 days of the 486 days of delay in completing building No. 6 arose from causes beyond the control of the contractor, leaving 91 days of the period of delay not due to causes beyond control of the contractors, for which number of days’ delay plaintiffs under the contract were liable to the United States for liquidated damages.
The decision of the Comptroller General was correct, and plaintiffs are not entitled to recover the amount so deducted and withheld. Plaintiffs are not entitled to recover the cost incurred by them in reconstructing building No. 6. The petition will be dismissed. It is so ordered.
Witalex, Judge; LittletoN, Judge; GkeeN, Judge; and Booth, Chief Justice, concur.