Garofano Construction Co., Inc., Claimant, *v.* State of New York, Defendant. (Claim No. 31943.)

Court of Claims, October 22, 1954.

*John B. Gilleran* and *Frank H. Connelly* for claimant.

*Nathaniel L. Goldstein* (*Edward L. Bookstein* of counsel), for defendant.

RYAN, J. Claimant contracted with the State of New York for separation of grades of Underhill Road and Taconic State Parkway in Westchester County. Claimant agreed to build a reinforced concrete arch bridge to carry the road over the parkway. The bridge had to be poured on falsework which would support it until the concrete set and which would then be removed. According to the original plan the falsework was to be supported by steel beams to afford a clear span of more than sixty-three feet in order that there would be no obstructions on the four-lane parkway and traffic could keep moving thereon during construction. Details of the falsework were to be prepared by the contractor and drawings were to be submitted and approved by the State's engineer.

The Korean war was in progress and allocations of steel were controlled by the Federal authorities who in due course approved the use of reinforcing steel for the concrete structure but refused to approve an allocation of steel beams which would be used only temporarily. When the claimant's efforts to borrow, rent or buy existing steel beams from other contractors and suppliers failed, claimant requested the State of New York to divert to this job steel already allocated to the State for other projects. This request was denied.

Thereupon, at the suggestion of the State's engineer, a plan for falsework using timber beams was prepared and approved and construction proceeded. However, instead of providing a clear span over the parkway, the timbers had to be supported in the center, or approximate center. This created an obstruc-

tion and claimant requested the State to close the parkway to traffic. This request was denied.

Claimant's contract required claimant to maintain traffic. For this item claimant bid the lump sum of $2,500 and agreed to put up signs and signals and warning devices as directed by the State's engineer. Claimant complied with such directions and suggested even more traffic control devices than the engineer ordered but asked extra pay for them, which was refused.

Claimant proceeded with the work. On July 10, 1952, at 3:00 A.M., a motorist crashed into the timber center support, knocked over flares, upset his automobile and started a conflagration which burned the timber falsework and damaged the bridge.

The State's engineer, relying on the " Damage " clause in the contract which put the risk of all work on the contractor until it had been finally inspected and accepted by the State, required claimant to make repairs. The "Damage" clause is an express recognition of the rule in *Tompkins* v. *Dudley* (25 N. Y. 272). Claimant made the repairs under protest at an expense of $64,606.08. Claimant also sustained a loss of timber, oak wedges and flasher lights by the fire in the amount of $20,512.25. Moreover the State deducted from the claimant's final payment on the contract the sum of $1,916.52 paid to consulting engineers who investigated the fire damage to the structure and recommended how repairs should be made. Claimant seeks to recover all these sums.

The " Damage " clause in the contract contained this sentence: " The Contractor, however, shall not be responsible for damages resulting from faulty designs as shown by the plans and specifications nor the damages resulting from wilful acts of Department officials or employees."

Claimant avers not that the design of the timber falsework was faulty nor that there was a structural defect in the center pier. There is no such contention in the claim nor in the proofs. There could, of course, be no justification for such a position because the detailed design of the falsework was prepared by the claimant, as required by the contract.

But, says the claimant's counsel, " the defect lay in the State's refusal to make the necessary corresponding changes in the traffic design to offset the hazard which the existence of the pier created." Counsel relies on those cases which hold that where a contractor knows or has reason to believe that the plans by which he proceeds to construct a building are defective, and follows such plans without pointing out such defects to the

owner, he may not recover if the building proves insufficient because of such defects. (*Rubin* v. *Coles,* 142 Misc. 139, and cases cited. Also, see *Dale* v. *United States,* 14 U. S. Ct. Cl. 514, 536; 17 C. J. S., Contracts, § 515, subd. b, p. 1108.) Conversely, argues counsel, this contractor is entitled to recover because he did point out the hazards of maintaining traffic on the parkway with a center pier obstructing it. The argument is ingenious. But, does the quoted clause in the contract provide claimant with the relief demanded? We are of the opinion that it does not. When claimant accepted the modification of its contract and agreed to go ahead with construction with a center pier obstructing the parkway there was no new agreement releasing claimant from its obligation to maintain traffic thereon. That obligation still existed. The point is not fairly debatable. (*Borough Constr. Co.* v. *City of New York,* 200 N. Y. 149; *Collins* v. *State of New York,* 259 N. Y. 200.) It seems obvious to us that the only measure which could have been taken to insure that no motorist would crash into the obstruction would have been to completely shut traffic off the parkway at the site of claimant's work. But the fact that this was so ordered by the park commission *after* the mishap, while it may indicate good judgment in hindsight, does not alter the legal situation herein. That must be resolved upon the facts existing *prior* to the calamity. These were: 1. That the State could not perform according to the original plan because it could not procure authorization for the use of the steel beams, and 2. that, nevertheless, the contractor, fully aware of the changed conditions under which it would proceed, went ahead with construction according to the altered plan and maintained traffic. Its responsibility to deliver to the State a completed bridge, undamaged, remained. The claim must be dismissed. Findings of fact and conclusions of law are filed herewith.