Richard S. Heller, J.
On April 9,1959, the claimant and the State entered into a contract for the reconstruction of about 1.6 miles of Route 15 in and immediately west of the Village of Bath, New York. Part of the work to be performed under this contact was the placing of about two and a half inches of blacktop on a concrete base.
All of the blacktop was laid by October 20,1959. The contract provided that none of this material should be placed from October 15, to May 15, nor when the air temperature in the shade was below 50 degrees Fahrenheit, except by written permission of the Deputy Chief Engineer. None of the paving was done when the air temperature was outside the specified limits and the paving that was done on October 16 and 20, 1959 was with the permission of the Deputy Chief Engineer.
The total length of the pavement was approximately 8,500 feet. Within two or three weeks after the pavement was laid it was noted that seams or joints in the pavement started to ravel. Throughout the Winter of 1959 and 1960 the top course disintegrated over about 6,000 feet of the pavement.
In April, 1960 the claimant was ordered to clean the loose material from the highway and resurface it. This required the repaving of approximately 6,000 feet of the entire contract area.
The contractor purchased the paving material from a supplier approved by the State and the State maintained an inspector at that supplier’s plant. The supplier of the paving material utilized bituminous material purchased from a supplier approved by the State and each shipment of bituminous material was accompanied by a so-called ‘ ‘ pink ticket ’ ’ indicating that the material had been tested by the State and met the State specifications.
There is no evidence as to what caused the raveling of the first pavement.
■State inspectors on the job testified that the contractor performed in accordance with the contract. The State had inspectors on the job but no material was ever rejected by these inspectors and State inspectors never objected to the methods or manner of performance by the claimant.
The work of removing the loose material from the highway and repaving the highway was completed under a force account.
*901 Claimant now seeks to recover for the costs of performing that work in the amount of $34,181.83.
Up to the point of the raveling of the first pavement, there is no showing that either party failed to carry out its respective obligations under the contract.
The claimant urges that the State exercised such control over the materials to be used and the manner in which the work was to be performed that the contractor discharged its total obligation when it carried out the construction in accordance with that control. It is asserted that in effect the State represented that building in accordance with State plans, design and specifications, utilizing State approved materials with continuous inspection by the State would result in a product meeting requirements for acceptance by the State.
The State carried out its functions of inspection and approval and the claimant built in accordance with the plans, specifications and such inspections. Nevertheless, for some undetermined reason approximately 6,000 feet of blacktop paving showed signs of deterioration within three weeks of being laid and prior to the completion of the contract and within months of the original laying deteriorated so badly that the State refused acceptance of the work and required the contractor to replace it.
There is therefore presented a situation where loss resulted although neither party was guilty of any violation of their respective obligations under the contract.
In Tompkins v. Dudley (25 N. Y. 272, 278) the court stated ‘ ‘ When one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it ’ ’.
It is pointed out in Garofano Constr. Co. v. State of New York (206 Misc. 760, affd. 1 A D 2d 306) that State contracts include an express recognition of the rule in Tompkins v. Dudley {supra). That clause which was contained in this contract reads: ‘ ‘ All damage, direct or indirect, of whatever nature resulting from the performance of the work or resulting to the work during its progress from whatever cause, including ■omissions and supervisory acts of the State, shall be borne and sustained by the Contractor, and all work shall be solely at his risk until it has been finally inspected and accepted by the State. The Contractor, however, shall not be responsible for damages resulting from faulty designs as shown by the plans and specifications nor the damages resulting from wilful acts of Department officials or employees and nothing in this paragraph or in this contract shall create or give to third parties any claim or right of action against the contractor or the State beyond such as may legally exist irrespective of this paragraph *902 or contract.” What occurred here is one of the risks which this contractor assumed under the terms of the contract. The situation here is not analogous to MacKnight Flintic Stone Co. v. Mayor (160 N. Y. 72). In that case the contractor performed work according to plan and specifications and the failure of the result could have been found by a jury to be due to defective design. In this case there is no showing .whatever of any defective design or improper act by the State, Likewise there is no showing of any failure or improper performance by the claimant but under those circumstances, the claimant had agreed to assume the risk involved.
Insofar as the claim seeks recovery of the amount of $34,181.83 encompassed in the force account for the removal of the deteriorated pavement and replacement thereof, the claim must be dismissed. The claim, however, also seeks recovery of $19,482.27 which was a balance concededly due to the claimant. Checks were issued for that sum payable to the claimant and forwarded to the claimant. Claimant, however, refused to accept that sum shown to be due by the final estimate since acceptance under the terms of the contract would have jeopardized its right to seek recovery of the additional amount it claimed to be due.
Unquestionably the claimant is entitled to judgment in the amount of $19,482.27. The only question is as to whether or not claimant is entitled to interest on that sum and if so to what date.
This situation too, is expressly covered by the contract. The contract provides, “ Should the contractor refuse to accept the final payment as tendered by the comptroller, it shall constitute a waiver of any right to interest thereon,”
Claimant is therefore entitled to judgment in the amount of $19,482.27.